**Todd R. PALMIERI and Stephanie J. Palmieri, Appellants**

v.

**Glenn R. PARTRIDGE and Holly M. Partridge, Appellees.**

Superior Court of Pennsylvania.

Argued March 10, 2004.

Filed July 2, 2004.

Daniel S. Bernheim, III, Philadelphia, for appellants.

Mark C. Clemm, Plymouth Meeting, for appellees.

Before: BOWES, McCAFFERY and POPOVICH, JJ.

BOWES, J.

¶ 1 Todd and Stephanie Palmieri appeal from the judgment entered on the nonjury verdict in favor of Appellees, Glenn and Holly Partridge. We affirm.

¶ 2 The following facts are relevant. In spring 2001, Appellees listed their home located at 275 Hothorpe Lane in Radnor Township for sale with Prudential, Fox, & Roach Realtors ("Prudential") for $2,475,000. On May 28, 2001, Appellants submitted a written offer to purchase the property for $2,000,000. Appellants' offer was printed on a standard real estate sales agreement approved by the Pennsylvania Association of Realtors. The agreement provided for an initial, non-refundable payment of $25,000 at signing plus a sum that, when added together with the aforementioned $25,000, would equal a down payment representing ten percent of the purchase price. This amount was to be paid within fourteen days of the signing. The remainder of the purchase price was due at settlement.

¶ 3 Appellees rejected Appellants' initial offer; however, the parties eventually agreed to a purchase price of $2,250,000. Handwritten changes were made to the sales agreement reflecting the increased sale price. The other terms of the agreement remained the same. The sale was not contingent upon Appellants' ability to acquire mortgage financing.

¶ 4 The agreement was executed on May 28, 2001, and Appellants paid the initial $25,000 deposit with a check drawn upon one of their business accounts. Appellants miscalculated the balance of the down payment owed to be $225,000 rather than $200,000. Two days after executing the agreement, Appellants realized that the initial deposit of $25,000 was drawn upon a closed bank account. Thereafter, on June 6, 2001, five days before the expiration of the fourteen day period outlined in the agreement, Appellants satisfied the

non-refundable deposit and wired the remaining miscalculated down payment totaling $225,000 to Prudential, Appellees' escrow agent. This payment should have been only $200,000. The parties dispute whether Appellants paid the down payment early as an act of good faith following an embarrassing error, or whether Appellees directed Appellants to pay the amount to continue as potential buyers. Either way, Appellants satisfied the down payment several days before the end of the fourteen-day period described in the May 28, 2001 sales contract.

¶ 5 Prior to the completion of the fourteen-day period, Appellants' financial status changed suddenly and on June 10, 2001, the thirteenth day following the date of execution, Appellants advised Appellees that they would be forced to rescind the agreement. Thereafter, on June 15, 2001, Appellants sought to have the $225,000 down payment returned to them; they conceded that the initial payment of $25,000 was non-refundable. On June 20, 2001, Appellants provided Appellees with a letter confirming their intention to rescind the agreement. The letter also reiterated Appellants' demand for the return of the $225,000 down payment and asked Appellees to place the property back on the market in an attempt to mitigate their damages. Appellees refused to return the escrowed funds; however, they diligently tried to sell the property. The property eventually sold for $1,850,000, on September 29, 2001.

¶ 6 Meanwhile, on June 29, 2001, Appellants initiated this civil action for return of their down payment. On September 23, 2002, the trial court entered partial summary judgment in favor of Appellees with regard to $225,000 of the down payment. Thereafter, a nonjury trial convened to dispose of the remaining $25,000, which Appellants mistakenly had included in the down payment. On March 10, 2003, the trial court awarded the $25,000 to Appellees. This appeal followed. While the appeal was pending, Appellants agreed to release the entire $250,000 from escrow rather than post a security bond. Nevertheless, Appellants continue to assert that they are entitled to the return of $225,000 of the $250,000 awarded to Appellees.

¶ 7 Appellants raise three issues:

1. Whether [the trial court] erred in denying [Appellants'] motion for summary judgment and granting [Appellees] partial summary judgment in [the] Order of September 24, 2002.

2. Whether the [trial court] erred in finding that the parties intended that any and all deposit monies paid by [Appellants] would be forfeited if [Appellants] cancelled the transaction in less than 14 days after the execution of the Agreement of Sale?

3. Whether [the trial court] erred in finding that at the time that the parties negotiated the terms of the Agreement of Sale for the real property which was the subject of the agreement, the increase in price was intended by the parties to increase the percentage of deposit money as well and was not a mutual mistake not noticed by any of the parties.

Appellants' brief at 4.

¶ 8 We review a trial court's grant of summary judgment for an abuse of discretion. *Brecher v. Cutler*, 396 Pa.Super. 211, 578 A.2d 481 (1990). In addition, we review the trial court's nonjury verdict to determine if the trial court's findings are supported by the evidence or whether the trial court committed legal error. *Stokes v. Gary Barbera Enterprises, Inc.*, 783 A.2d 296 (Pa.Super.2001). However, as the issues herein concern the interpretation of a contract, a question of law, our standard of review of the sales agreement is *de novo*. *Kvaerner Metals v. Commercial Union Ins. Co.*, 825 A.2d 641 (Pa.Super.2003). Our goal in reviewing the sales agreement is to determine the parties' intent as manifested by the terms of the agreement. *County of Delaware v.*

*J.P. Mascaro & Sons, Inc.*, 830 A.2d 587 (Pa.Super.2003). If the express terms of the contract are clear, we determine the parties' intent by the language employed in the agreement, not by the parties' silent intentions. *Id.*

¶ 9 Appellants' first substantive issue concerns whether they should be deemed to have forfeited their entire down payment since they notified Appellees of their desire to withdraw from the agreement prior to the expiration of the fourteen-day period. Appellants argue that neither party intended for the buyer to forfeit the entire ten percent deposit if the buyer was forced to rescind the contract prior to the fourteenth day. Essentially, Appellants argue that they should have forfeited only the $25,000 initial non-refundable deposit payment because Appellees would not have been entitled to the additional sum had Appellants rescinded prior to paying the down payment.

¶ 10 Appellants ask this Court to invoke the doctrine of necessary implication and enforce what they characterize as the parties' clear intentions. Courts employ the doctrine of necessary implication as a means of avoiding injustice by inferring contract provisions that reflect the parties' silent intent. The doctrine has been stated as follows:

> In the absence of an express provision, the law will imply an agreement by the parties to a contract to do and perform those things that according to reason and justice they should do in order to carry out the purpose for which the contract was made and to refrain from doing anything that would destroy or injure the other party's right to receive the fruits of the contract.

*Somers v. Somers*, 418 Pa.Super. 131, 613 A.2d 1211, 1214 (1992) (quoting *Frickert v. Deiter Bros. Fuel Co., Inc.*, 464 Pa. 596, 603, 347 A.2d 701, 705 (Pomeroy, J., concurring) (1975)). Appellants argue that pursuant to this doctrine, we should elect to insert an implied term in the sales agreement allowing Appellants to limit the amount of their forfeiture to the initial non-refundable $25,000 deposit because "the contract is silent on the effect of paying the [down payment] early." Appellants' brief at 18. Appellants continue that the parties' clear intent was to have the down payment due on the fourteenth day following execution.

¶ 11 For the following reasons, we conclude that the trial court did not err in refusing to apply the doctrine of necessary implication to supplement the express terms of the sales agreement. Appellees do not subscribe to Appellants' position that the parties implicitly intended for the payment to become due on the last day of the fourteen day period and neither do we. *See J.P. Mascaro & Sons, Inc., supra* (absent ambiguity, express terms of contract supersedes party's silent intent). Appellants' repeated assertion that they paid the down payment before it became due mischaracterizes the express terms of the sales agreement, which provides, in pertinent part, as follows:

3. TERMS
(A) Purchase price[:] Two million two hundred fifty thousand dollars ($2,250,000), which will be paid to Seller as follows:

| | |
|---|---|
| (B) Cash or check at signing this agreement: | $ 25,000 |
| (C) Cash or check **within 14 days of the execution** of the agreement | $ 225,000 [1] |
| . . . . | |
| (E) Cash, cashier's or certified check at time of settlement: | $2,000,000 [2] |
| TOTAL | $2,250,000 |

1. The contemplated ten percent deposit, the sum of subsection B and subsection C, should only have totaled $225,000, not $250,000.

2. If the parties had paid the correct deposit amount of $225,000, $2,000,000 would have been due at settlement. In light of the mathematical error reflected in the deposit numbers, the balance due in the contract was also incorrect. Had the settlement occurred, Appellants' deposit of $250,000 would have re-

Real Estate Sales Agreement, 5/28/01, at 2 (emphasis added). As the down payment was to be paid **within** the fourteen-day period following execution of the agreement, the payment became due on May 28, 2001, the date the agreement was executed, and it would have remained due until June 11, 2001, had Appellants not elected to satisfy the obligation on June 6, 2001. Indeed, contrary to Appellants' novel interpretations, June 11, 2001, was not the due date, but rather, the last acceptable day to pay the down payment.

¶ 12 Further, as the express terms of the contract provide for the forfeiture of all sums paid to the date of a breach as liquidated damages to a non-breaching party, there is no need to create an artificial contract provision to resolve this matter. The liquidated damages clause provides as follows:

> 27. TIME IS OF THE ESSENCE–DEFAULT
>
> Should Buyer:
>
> (A) Fail to make any additional payment as specified in paragraph 3 [Terms]; OR
>
> . . . .
>
> (C) Violate or fail to fulfill and perform any other terms or conditions of this Agreement; then in such case, . . . .
>
> > Seller is limited to retaining sums paid by Buyer, **including deposit monies**, as liquidated damages. If Seller elects to retain all sums paid by buyer, **including deposit monies**, as liquidated damages, Buyer and Seller will be released from further liability or obligation and this Agreement will be VOID.

*Id.* at 12.

¶ 13 As evidenced by the agreement, the parties contemplated the possibility that an unexpected turn of events could transpire, rendering the buyers unable to perform, and the agreement expressed the parties' respective rights and obligations in the event that it occurred. Namely, the buyers would forfeit any money paid to the date they failed to perform.[3] Since the express, unambiguous terms of the sales agreement resolve the instant matter directly, we need not impute an artificial term into the agreement. *See Hutchison v. Sunbeam Coal Corp.,* 513 Pa. 192, 519 A.2d 385 (1986) (law must not imply contract different from that which parties expressly adopted, especially where an imputed covenant would tend to a matter specifically addressed in contract).

¶ 14 Next, we must determine whether the liquidated damages clause contained in the sales agreement is enforceable. A liquidated damages clause that is tantamount to a penalty is unenforceable. *See Olmo v. Matos,* 439 Pa.Super. 1, 653 A.2d 1 (1994). To be enforceable, liquidated damages must be a reasonable forecast of the possible harm to the non-breaching party. *Id.* In *Olmo,* we struck a liquidated damages clause as an unenforceable penalty. However, in striking the provision, we acknowledged that "a seller may elect to retain deposit money as liquidated damages," *id.* at 4, 653 A.2d 1, and we noted:

> No rule in respect to the contract (for the sale of real estate) is better settled . . . than this: that the party who has

---

sulted in a balance owed at settlement of $1,975,000.

**3.** We acknowledge that Appellants would have lost only $25,000 had they not paid the down payment prior to rescinding the agreement. However, since this unfortunate reality does not defeat the express terms of the contract, it does not alter our analysis.

advanced money, or done an act in part performance of the agreement, and then stopped short and refuses to proceed to its ultimate conclusion, the other party being ready and willing to proceed and fulfill all his stipulations according to the contract, will not be permitted to recover back what has thus been advanced or done.

*Id.* (quoting *Sanders v. Brock,* 230 Pa. 609, 614, 79 A. 772, 773 (1911)).

 ¶ 15 Unlike *Olmo,* where the liquidated damages clause called for damages of sixty percent of the purchase price, the amount Appellants forfeited in the case *sub judice,* **including the overpayment,**[4] constitutes only 11.1 percent of the $2,250,000 purchase price. Traditionally, a forfeiture that reflects nine percent, *see Laughlin v. Baltalden, Inc.,* 191 Pa.Super. 611, 159 A.2d 26 (1960), or ten percent, *see Kraft v. Michael,* 166 Pa.Super. 57, 70 A.2d 424 (1950), of the purchase price is not tantamount to a penalty. As the liquidated damages awarded to Appellees are reasonable in light of the elevated sale price, we conclude that application of the provision is not an unenforceable penalty. We also note that the liquidated damages are also reasonable in light of the $400,000 loss Appellees incurred on the subsequent sale of the property. Hence, we affirm the judgment entered upon the $25,000 nonjury verdict and sustain the trial court's previous grant of partial summary judgment in favor of Appellees.

 ¶ 16 Finally, we deny Appellees' application for attorneys' fees and delay damages filed pursuant to Pa.R.A.P. 2744. Rule 2744 provides that this Court may award reasonable attorneys' fees and delay damages at six percent per year in addition to legal interest "if it determines that an appeal is frivolous or taken solely for delay or that the conduct of the participant against whom costs are to be imposed is dilatory, obdurate or vexatious."

¶ 17 Appellees' application relies upon the following averments. On June 17, 2003, Appellants attempted to appeal the nonjury verdict in favor of Appellees to this Court before the judgment was entered on that verdict, and Appellants did not file a praecipe to have the judgment entered on the verdict until September 26, 2003. In addition, Appellees challenge the propriety of Appellants' conduct in releasing the disputed funds from escrow rather than posting a $50,000 security bond.

¶ 18 Appellants' conduct does not satisfy the standard discussed in Rule 2744. Indeed, we find that Appellees contributed to the purported delay by attempting to execute the verdict in their favor without having first reduced it to judgment. Appellees also attempted to levy Appellants' personalty despite the fact that the disputed amount was secure in escrow at that time. Appellants properly contested Appellees' procedurally infirm course of conduct. As Appellants' conduct was reasonable and Appellees' own missteps contributed to the delay, we deny Appellees' application for relief.

¶ 19 Judgment affirmed. Application for relief pursuant to Pa.R.A.P. 2744 denied.

---

4. Had Appellants not mistakenly paid the additional $25,000 towards the down payment, they would not be liable for it; however, as with the larger sum at issue, having paid the $25,000, they are precluded from recouping it under the express terms of the sales contract.