J-A14014-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| L.A.V. MP HOLDING, LLC, INDIVIDUALLY A MEMBER OF, AND ON BEHALF OF, MORROW PARK CITY APARTMENTS, LLC | : : : : : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : : : : : : : : | No. 582 WDA 2019 |
| V.G. MORROW PARK CAPITAL, LLC | : : : : : : : : : | |
| v. | : : : : : : : | |
| MORROW PARK HOLDINGS, LLC, VILLAGE GREEN RESIDENTIAL PROPERTIES, LLC, CCI HISTORIC, INC., VG ECU HOLDINGS, LLC, AND COMPATRIOT CAPITAL, INC. | : | |

APPEAL OF: VILLAGE GREEN
RESIDENTIAL PROPERTIES, LLC

Appeal from the Order Entered April 12, 2019
In the Court of Common Pleas of Allegheny County Civil Division at
No(s): No. GD-17-006216

J-A14014-20

BEFORE:  SHOGAN, J., McLAUGHLIN, J., and MUSMANNO, J.

MEMORANDUM BY SHOGAN, J.:                    **FILED: APRIL 21, 2021**

Appellant, Village Green Residential Properties, LLC ("VGRP"), appeals from an order entered on April 12, 2019,[1] in the Allegheny County Court of Common Pleas.  In the April 12, 2019 order, the trial court concluded that VGRP was in breach of an agreement to purchase an apartment building located in Pittsburgh, Pennsylvania.  Order, 4/12/19.  As a result of VGRP's breach, the trial court concluded that pursuant to the terms of the agreement, VGRP's sales agreement terminated, and VGRP forfeited its down payment. *Id.*  Because the trial court concluded that the VGRP sales agreement was terminated, the trial court approved the court-appointed Special Master's recommendation to sell the property to Appellees, Morrow Park Holdings, LLC, CCI Historic, Inc., VG ECU Holdings, LLC, and Compatriot Capital, Inc. (collectively "Appellees").[2] *Id.*  After careful consideration, we affirm.

_____

[1]  The order on appeal was dated "April 11, 2019."  Throughout the record and in the briefs, the order is, on occasion, noted as either the April 11, 2019 order or the April 12, 2019 order.  We point out that the order was not filed and entered on the docket until April 12, 2019.  Accordingly, when referencing the order on appeal, we refer to it as the April 12, 2019 order.

[2]  This is an appeal as of right from an interlocutory order.  *See* Pa.R.A.P. 311(a)(2) (permitting an appeal as of right from an order confirming, modifying, dissolving, or refusing to confirm, modify or dissolve an attachment, custodianship, receivership, or similar matter affecting the possession or control of property).

- 2 -

The trial court summarized the relevant facts and procedural history of this matter as follows:

This matter is an over[-]litigated business dispute between and among the Defendants, two sophisticated real estate development groups. These two out-of-state groups formed Morrow Park City Apartments, LLC, ("MPCA") along with Plaintiff, L.A.V., Associates, LP ("LAV", [which] owned the land upon which the apartments were built), to develop and hold a successful luxury apartment building. The building, Morrow Park City Apartments, is on the corner of Bigelow Boulevard and Liberty Avenue in the Shadyside/Bloomfield neighborhood of Pittsburgh. L.A.V. contributed the land upon which the apartments were built in consideration for a minority interest in MPCA.

The majority interest in MPCA is held by Defendant, V.G. Morrow Park Capital, LLC ("VG Capital"), an entity controlled by Morrow Park Holding, LLC ("Morrow Holding"). Village Green Residential Properties, LLC ("VGRP") and CCI Historic, Inc[.], ("CCI") in turn, share control of Morrow Holding and, through these entities control MPCA. These entities were formed for the specific purpose of developing and holding the Morrow Park apartment complex.

In 2017, due to a deadlock between majority interest holders in Morrow Holding, CCI and VGRP, MPCA was facing a default on a 36.5 million dollar bank note. The note was the result of the financing secured to construct the apartment building. The Defendants could not agree on permanent refinancing to replace the construction loan note and were holding each other hostage in the process of refinancing. More importantly, however, the majority interest holders were also holding LAV, the direct minority interest holder, hostage as well. LAV had no interest in the arm wrestling between the CCI entities and the Village Green Entities (this contest over majority member interests in the MPCA entities was and is pending in Delaware Chancery Court), but certainly did not want to lose its investment to a foreclosure action because of the majority deadlock. In the late Spring of 2017, this management deadlock was preventing refinancing and default under the terms of the note was imminent.

LAV petitioned this [c]ourt for the appointment of receiver due to the deadlock in the majority ownership of MPCA, and this

[c]ourt obliged. The receiver was designated by the [c]ourt as "Special Master"[1] and charged with immediately securing financing to avoid default and subsequently charged to sell the property to permanently resolve the deadlock, while at the same time, maximizing the value of the asset and cashing LAV … out of it[]s investment.

> [1] This [c]ourt appointed James D. Chiafullo, Esq. to be the Special Master. Mr. Chiafullo is a Director at Cohen & Grigsby and has practiced in the area of commercial transactions for 37 years.

This [c]ourt's [o]rder appointing the Special Master entered on May 2, 2017 was appealed by the CCI parties to Superior Court. CCI subsequently discontinued it[s] appeal on March 20, 2018.

After securing financing for the building and averting the urgent financial issue, the Special Master was directed by the [c]ourt on February 14, 2018 to proceed with the sale of the building because the deadlock between the majority interest holders was ongoing and had not abated nor had it been adjudicated in Delaware.

After noteworthy procedural wrangling and significant effort by the Special Master, the Morrow Park City Apartments were sold to the CCI parties. VGRP, the losing bidder in the sale process, now appeals this [c]ourt's Order approving the Special Master's recommendation to sell the apartment building to CCI.

<u>THE SALE PROCESS</u>

On February 14, 2018, in an effort to resolve the deadlock in the majority ownership of the MPCA entities and therefore MPCA's inability to function absent the continuing imposition of a Special Master and the supervision of this [c]ourt, the Special Master was directed by [c]ourt [o]rder to market the asset for sale to a bidder making the highest and best offer to purchase the building.

After vetting seven prominent Commercial Real Estate Brokers, the [S]pecial Master engaged CBRE Capital Markets, Inc. ("CBRE")[2] as the broker of record for the asset sale. CBRE evaluated the property and advised the Special Master to list the building for sale at $61,000,000.

<sup></sup>2 CBRE is the largest commercial real estate service company in the world.

On July 13, 2018[,] VGRP through it[]s affiliate, City Club Apartments, LLC, sent a Letter of Intent offering to purchase the building for $58,500,000.00. In response, CCI sent a Letter of Intent to buy the building at $58,750,000. CBRE [sought] additional offers and received six additional offers. The Special Master contacted these bidders requesting their best and final offers. VGRP then submitted an offer purporting to match the CCI offer at $58,750,000. Finally[,] CCI attempted a topping offer of $58,850,000.

On September 28, 2018 the Special Master filed a recommendation to approve sale of the building to VG[PR] for nine different reasons,[3] but primarily because even though VG[RP] offer was $100,000.00 less than CCI's final offer, the VGRP offer was superior because of its favorable terms. VGRP's terms included that it was an all cash offer (CCI's offer was partially achieved through a promissory note), and did not include CCI provisions regarding resolution of the ongoing litigation over which neither the Special Master nor the seller had control. Additionally, VGRP's earnest money deposit of $1.5 million was non-refundable which was more favorable than CCI's earnest money deposit of $1.2 million which was refundable. CBRE concurred in the Special Master's conclusion that the VGRP's offer was the best offer.

[3] The Special Master's reasons for its recommendation are as follows:

(i) City Club's offer is superior to all but one of the other offers in price[;]

(ii) Although City Club's offer is $100,000 less than Compatriot's offer, City Club's offer contained more favorable terms[;]

(iii) City Club offer is all-cash, whereas Compatriot's offer involved a partial promissory note;

(iv) Compatriot's offer also attempts to direct to which entities the net sale proceeds of the sale of the Asset would go;

(v) Specifically, Compatriot's offer provides that the net sales proceeds distributed to LAV Associates, L.P.[,] would be funded by the seller in cash, whereas the net sales proceeds to be paid to VG Morrow Park Capital LLC would be funded by a promissory note from Compatriot, payable upon a judicial determination of the proper distribution of the proceeds between its members, unless the members of VG Morrow park Capital agree upon the proper distribution amongst themselves;

(vi) Compatriot's offer also requires the dismissal with prejudice of this case when the net sale proceeds are distributed, a mutual release between Morrow Park City Apartments LLC, Compatriot, and LAV Associates, L.P., and the termination of all duties of the Special Master in connection with the Asset;

(vii) The proper distribution of the net sales proceeds is the very subject of the litigation between the parties, and the Special Master lacks the authority to sell the Asset subject to these contingencies[;]

(viii) Moreover, the use of a promissory note between parties, rather than cash, creates collection risk and may require further judicial intervention to enforce; and

(ix) City Club's earnest money deposit of $1.5 million (to be paid in two separate installments) is nonrefundable, whereas Compatriot's earnest money deposit of $1.2 million is refundable in the event that all of the aforementioned conditions to closing do not occur.

Special Master's Recommendation to Approve Sale of Property, dated September 28th, 2018.

CCI filed objections to the Special Master's recommendation on October 12th, 2018 and the [c]ourt held a hearing on October 15, 2018. Following the hearing, the [c]ourt issued an [o]rder approving the Special Master's recommendations and the sale to VGRP for $58,750,000 on the terms specified. On October 18th, 2018, VGRP and MPCA entered into an Agreement of Sale which required, among other provisions, that VGRP honor its offer making a non-refundable down payment of $1.5 million; $750,000.00 of which was due on October 21, 2018 with the remaining $750,000.00 due on November 8, 2018. The Agreement also provided that VGRP "understood and acknowledged" that there was no right of inspection or a due diligence period. The closing was set for November 19th, 2018, with provision for a 30 day extension upon VGRP increasing its non-refundable down payment by $500,000.00 to $2 million.

Despite its active participation in the sale process, CCI appealed this [c]ourt's [o]rder of October 15, 2018 approving the sale of the Morrow Park City Apartment building to VGRP on November 6, 2018, challenging the Special Master's authority to sell the building and also filed an Emergency Motion to Stay the Sale pending the appeal.

On November 6, 2018, VGRP filed papers entitled "Emergency Motion to Compel Access to Necessary Information for Closing Relating to Morrow Park City Apartments, and for an Order of Contempt against CCI Historic, Inc., VG ECU Holdings, LLC and Compatriot Capital, Inc[.]" essentially complaining that it had been denied access to the building to do "necessary inspections", despite the fact that it had specifically agreed that it had no right to inspect.

Following a hearing on both CCI's Motion to Stay and VGRP's Motion to Compel, this [c]ourt denied both motions effectively clearing a path for the sale to close in favor of VGRP.

Curiously, VGRP on November 16, 2018 filed an Emergency Motion to Stay the sale pending the CCI parties' pending appeal challenging the authority of the Special Master in which they argued that CCI's pending appeal in some manner invalidated the VGRP/MPCA Sales Agreement. Compatriot immediately withdrew its appeal on November 17, 2018, and then VGRP withdrew its Emergency Motion to Stay on November 26, 2018.

In the interim however, VGRP did not close on the sale of the apartment building on the set closing date of November 19, 2018, nor did it extend the closing date under the terms of the Sale Agreement by making the additional down payment of $500,000.00.

On December 3, 2018, the Special Master notified VGRP that it was in default of the Sales Agreement and because of its default, the Seller terminated the Sales Agreement. The Special Master[] also notified VGRP that it's earnest money of $1.5 million was being disbursed to the Seller.

Subsequent to default and termination of its Sales Agreement on December 11, 2018, VGRP proposed an amendment to the now terminated Sales Agreement permitting it to do inspections that it claimed were necessary to obtain financing and providing 45 additional days to close the transaction without the payment of the additional $500,000.00.

In response to the proposed amendmen[t,] the Special Master requested assurances from VGRP that it either had the equity or had obtained financing sufficient to close the sale. The Special Master received neither from VGRP and as a result, the Special Master went back to seeking other purchasers for the Morrow Park City Apartments.

On December 20, 2018, VGRP filed papers called a "Motion to Amend and then Enforce Sales Agreement["] which essentially sought to have this [c]ourt reform the now terminated Sales Agreement to include the amendment that it had proposed to and that had been rejected by the Special Master. Very shortly thereafter[,] CCI made a new offer to purchase MPCA on December 28, 2018 for $57,500,000. The Special Master recommended that CCI's new and improved offer be approved by the [c]ourt on January 8, 2019, for among other reasons,[4] because CCI's new offer was now an all cash offer without any contingencies and CCI proposed to close within 21 days. CCI also now agreed to assume the construction loan still outstanding on the building and promised LAV … cash at the closing for [its] minority interests.

[4] The Special Master's recommendation for approval of sale to CCI was based upon the following reasons;

(i) VGRP is in default of the VGRP Agreement and, in any event, has provided no evidence of the necessary equity or financing sufficient to purchase the Asset;

(ii) the CCI is an all-cash offer that does not require inspection or due diligence, nor does it contain any contingencies;

(iii) CCI Historic has provided evidence to the Special Master sufficient to prove that CCI Historic has the wherewithal to close on the CCI Offer;

(iv) although the CCI Offer is less than VGRP's offer, CCI has agreed to close the transaction within 21 days, whereas; VGRP seeks 45 additional days, and the Special Master believes that avoiding further delay in the Asset's sale would benefit Morrow Park City Apartments, LLC;

(v) CCI Historic has agreed to assume the $34,321,983 construction loan encumbering the Asset and to provide the lender with a substitute guarantor to replace Jonathan Holtzman, whereas VGRP did not
so agree and would have to immediately obtain a new loan;

(vi) Plaintiff LAV Associates, L.P. will receive cash for their Morrow Park City Apartments, LLC at closing.

Special Master's Amended Recommendation to Approve Sale of Property, dated March 4th, 2019.

Following a hearing on the Special Master's Amended Recommendations and VGRP's "Motion to Amend" on January 31, 2019, the [c]ourt took the Motion to Amend and the Special Master's Recommendation under advisement and granted the parties a short period of time to attempt to negotiate a settlement of the matter. A settlement was not accomplished and ultimately, this [c]ourt denied VGRP's Motion to Amend and approved the

even more favorable sale to CCI which newly provided that CCI would pay off MPCA's debt at closing rather than assuming it. The [c]ourt approved the sale to CCI as recommended on April 1[2], 2019 …..

Trial Court Opinion, 1/27/20, at 1-7.

The trial court's April 12, 2019 order on appeal provided, in relevant part, as follows:

1. The October 18, 2018 sales agreement that the [c]ourt authorized the Special Master to accept for Morrow Park City Apartments, LLC ("MPCA"), on October 15, 2018, terminated on its own terms by VGRP's default of its obligations to close or pay an additional $500,000 by November 19, 2018. Accordingly, the Special Master's March 5, 2019 Motion to Confirm Default is granted, and VGRP's December 20, 2018 Motion to Amend and Enforce Sales Agreement is denied.

2. Pursuant to Paragraph 20 of the October 18, 2018 sales agreement, MPCA is entitled to retain VGRP's $1.5 million deposit plus earned interest thereon (the "Down Payment"), which represents appropriate and reasonable liquidated damages arising from VGRP's default and does not constitute an unlawful penalty. *See Palmieri v. Partridge*, 853 A.2d 1076, 1080-81 (Pa. Super. Ct. 2004); *Laughlin v. Baltalden, Inc.*, 159 A.2d 26, 29 (Pa. Super. Ct. 1960); *Kraft v. Michael*, 70 A.2d 424, 425-26 (Pa. Super. Ct. 1950); and the cases cited therein. Accordingly, the Title Company is ordered to immediately release and pay the Down Payment to MPCA and shall not be liable to any party for its compliance with this Order.

3. The Special Master's March 5, 2019 recommendation for this [c]ourt to approve the sale of Morrow Park City Apartments ("Apartments") to CCI Historic, Inc. under the terms of the sales agreement (the "Offer") attached hereto as Exhibit A is accepted. The [c]ourt hereby authorizes the Special Master to accept the Offer for MPCA and proceed to close the sale in accordance with its terms.

4. The Compatriot Parties' April 2, 2019 Motion to Approve Proposed Distribution Schedule to Expedite Closing is granted. The proposed distribution schedule attached hereto as Exhibit B is

accepted. The Special Master is authorized to distribute the net sales proceeds at closing to LAV and VG Morrow Park Capital, LLC, in accordance with such schedule, subject to any adjustments that may be required under the executed sales agreement or otherwise to properly reflect the accounts as they appear on the actual closing date. Absent written consent of both VGRP and the Compatriot Parties, the Special Master shall pay the net sales proceeds owing to VG Morrow Park Capital, LLC, including all amounts currently held by MPCA, to the Delaware Chancery Court for resolution of the disputes and claims between VG Morrow Park Capital, LLC's members.

5. Payment for Special Master Chiafullo as well as his reasonable costs associated with this Order shall be made by MPCA from the proceeds of the sale of the Apartments in accordance with the process set forth in the prior Orders entered on February 14, 2018, May 2 and 3, 2017 and July 10, 2017.

6. VGRP's February 25, 2019 Motions for Leave to File Complaint under Seal and to Assign Case to the Commerce Case are granted, and the Compatriot Parties' March 9, 2019 Motion to Enforce the [c]ourt's February 14, 2018 Order is denied. VGRP may bring its action against Morrow Park City Apartments, LLC, CCI Historic, Inc., VG ECU Holdings, LLC, and Complaint Capital immediately, and the record in that matter shall be sealed by the Prothonotary to preclude public access to the docket and material of record, including the initial filing of the Complaint. Once filed, VGRP's new action shall be assigned to the Commerce and Complex Litigation Center, Judge Ward presiding.

Order, 4/12/19, at ¶¶ 1-6.

On April 18, 2019, VGRP filed a timely appeal, and on April 23, 2019, the trial court directed VGRP to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925. VGRP filed its Pa.R.A.P. 1925(b) statement on May 14, 2019, and raised the following issues:

1. The trial court erred in its Order of Court dated April 1[2], 2019 ("April 1[2] Order"), by granting the Special Master's Motion to Confirm VGRP's Default and by denying VGRP's Motion to Amend and Enforce Sales Agreement where CCI Historic, Inc. ("CCI"), VG

- 11 -

ECU Holdings, LLC ("VG Holdings") and Compatriot Capital, Inc. ("Compatriot") (collectively the "Compatriot Parties") actively interfered with the sale of the Property to VGRP;

2. The trial court erred in its April 1[2] Order by granting the Special Master's Motion to Confirm VGRP's Default and by denying VGRP's Motion to Amend and Enforce Sales Agreement where MPCA's material default of the Sales Agreement occurred prior to VGRP's default;

3. The trial court erred in its April 1[2] Order by granting the Special Master's Motion to Confirm VGRP's Default and by denying VGRP's Motion to Amend and Enforce Sales Agreement where the court did not consider the complaint VGRP had sought leave to file for specific performance against MPCA, did not conduct a hearing on whether VGRP's deposit could be forfeited as liquidated damages and MPCA did not file an action against VGRP to hold it in default under the Sales Agreement;

4. The trial court erred in its April 1[2] Order by granting the Special Master's Motion to Confirm VGRP's Default and ordering VGRP's $1.5 million to be released to MPCA where the deposit could only be forfeited as "liquidated damages"; and where MPCA had not adhered the procedural predicates to secure damages, established liability on the part of VGRP, or established that the deposit constituted reasonable liquidated damages in the event that it did establish liability;

5. The trial court erred in its April 1[2] Order by approving the Second Amended Recommendation of Sale of the Property to CCI and in approving the Proposed Distribution Schedule where:

a. the process by which the Special Master obtained CCI's offer to purchase the Property was conducted outside of the bidding process, behind closed doors, and did not account for MPCA's failure to close on the Sales Agreement with VGRP;

b. the sales price was $1.2 million less than VGRP's offer;

c. the Special Master failed to provide the [c]ourt with evidence that CCI was financially able to close the transaction and misstated that VGRP did not have the

financial ability to close, again without any evidence to support that misstatement;

d. the court had VGRP's complaint in which VGRP was seeking the specific performance of MPCA to proceed with the sale under the Sales Agreement.

VGRP's Pa.R.A.P. 1925(b) Statement, 5/14/19, at 1-2. On January 27, 2020, the trial court filed an opinion pursuant to Pa.R.A.P. 1925(a).

However, in its appellate brief, VGRP departs from the issues raised in the Pa.R.A.P. 1925(b) statement and instead presents the following issues in its statement of questions involved:

[A]. Did the trial court err by forfeiting VGRP's entire down payment to the seller?

[B]. Did the trial court err when permitting the Special Master to sell the real estate to CCI when a sale to VGRP remained viable and in the best interests of the seller?

VGRP's Brief at 6. Confusing the issues further, VGRP attempts to expand on these issues in the argument portion of its brief as follows:

A. VGRP Should Receive a Refund of its Down Payment.

1. The trial court overlooked the law of contract conditions and materiality of breach.

2. VGRP did not forfeit its down payment because MPCA's appeal was a failure of a condition excusing VGRP's duty to close.

3. The Special Master's failure to provide access to the property excused VGRP from closing.

a) The extent to which the injured party will be deprived of the benefit which he reasonably expected;

b) The extent to which the injured party can be adequately compensated for that part of the benefit of which he will be deprived;

c) The extent to which the party failing to perform or to offer to perform will suffer forfeiture;

d) The likelihood that the party failing to perform or offer to perform will cure his failure, taking account of all the circumstances including any reasonable assurances;

e) The extent to which the behavior of the party failing to perform or offer to perform comports with standards of good faith and fair dealing.

4. Even if VGRP defaulted by failing to close, $1.5 million in liquidated damages amounts to an unreasonable penalty.

B. The trial court erred by allowing the Special Master to sell the real estate to CCI when a sale to VGRP remained viable and in the best interests of the seller.

VGRP's Brief at 26-38.

We note the disparity between VGRP's statement of questions involved and the headings of the discrete issues enumerated in the argument portion of VGRP's brief. *Id.* at 6, 26-38. *See* Pa.R.A.P. 2116(a) (providing that the statement of questions involved must state concisely the issues to be resolved without unnecessary detail and will be deemed to include every subsidiary question fairly comprised therein; an issue will not be considered unless it is stated in the statement of questions involved or is fairly suggested thereby); *see also* Pa.R.A.P. 2119(a) (stating that the argument shall be divided into as many parts as there are questions to be argued). Moreover, it is well settled that any issues not raised in a court-ordered Pa.R.A.P. 1925(b)

statement will be deemed waived on appeal. ***Commonwealth v. Castillo***, 403, 888 A.2d 775, 780 (Pa. 2005); ***see also Lineberger v. Wyeth***, 894 A.2d 141, 148 n.4 (Pa. Super. 2006) (noting that the principles enunciated in criminal cases surrounding application of Rule 1925(b) and concise statements of errors complained of on appeal apply equally to civil cases).

We are constrained to point out that our review is hampered by the discrepancy between VGRP's Pa.R.A.P. 1925(b) statement, which was presented to the trial court, and the issues VGRP purports to raise in its appellate brief. VGRP's statement of questions involved and the sub-issues later presented in the argument portion of the brief bear little, if any relation to VGRP's Pa.R.A.P. 1925(b) statement. The majority of VGRP's issues in its appellate brief never were presented to the trial court. For the reasons set forth below, we deem these issues waived on appeal. ***See*** Pa.R.A.P. 1925(b)(4)(vii) ("Issues not included in the [Pa.R.A.P. 1925(b)] Statement … are waived."); ***see also*** Pa.R.A.P. 302 ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal."). To the extent that VGRP's issues or sub-issues are fairly suggested by the statement of questions involved and properly preserved for appeal, we attempt to address them.[3]

---

[3] We also note that the trial court expressed its consternation with VGRP's failure to identify with specificity the issues it purported to raise on appeal and concluded that it could not address issues of which it was not aware. Trial Court Opinion, 1/27/20, at 9.

In its brief, VGRP's first issue and sub-issues concern the forfeiture of its down payment made pursuant the October 18, 2018 agreement of sale between VGRP and MPCA ("the agreement"). The issues concern the interpretation of that contract. As such, the scope of our review is plenary, and our standard of review is *de novo*. ***Michael and Linda, LLC v. Smith***, 216 A.3d 262, 264 (Pa. Super. 2019).

VGRP contends that the trial court erred when it found VGRP in default under the agreement and permitted MPCA to retain VGRP's down payment of $1.5 million. VGRP's Brief at 26. VGRP then enumerates examples of the trial court's alleged errors. ***Id.*** at 26-36.

Relative to VGRP's default as the buyer, the agreement provides as follows:

> 20. Buyer's Default. If Buyer shall default in performance of its obligations under this Agreement, Seller's sole remedy shall be to waive any claim for loss of bargain, in which event the Down Payment shall be retained by Seller as liquidated damages, whereupon Buyer and Seller shall be relieved of all further liability under this Agreement and this Agreement shall terminate forthwith and be of no further force and effect, except for obligations which expressly survive termination of this Agreement and any indemnification obligations.

The Agreement, 10/18/18, at ¶ 20.

VGRP asserts that the trial court failed to weigh the "materiality" of its breach. VGRP's Brief at 26. In response, Appellees assert that VGRP did not raise this issue before the trial court. Appellees' Brief at 58. We agree and conclude that VGRP never raised a claim concerning the materiality of the

breach in its Pa.R.A.P. 1925(b) statement. Accordingly, this issue is waived. ***Castillo***, 888 A.2d at 780.

Next, VGRP alleges that it did not forfeit its down payment because MPCA breached the agreement when it filed an appeal that later was withdrawn. VGRP's Brief at 31. However, VGRP failed to raise an issue concerning MPCA filing an appeal in its Pa.R.A.P. 1925(b) statement. Although, in a boilerplate fashion, VGRP did allege that MPCA was in default, VGRP never informed the trial court what action or inaction constituted that alleged default. Indeed, the trial court stated: "VGRP does not bother to inform us what [its] claim of material default on the part of MPCA was. … [T]his [c]ourt can[not] address something of which it is not aware." Trial Court Opinion, 1/27/20, at 9. We conclude that VGRP's vague allegation of error again results in waiver. ***See Satiro v. Maninno***, 237 A.3d 1145, 1150 (Pa. Super. 2020) (a Pa.R.A.P. 1925(b) statement that is too vague to allow the trial court to identify the issue results in waiver).

In its third sub-issue, VGRP alleges that the trial court erred in concluding that VGRP was in breach because the Special Master failed to provide access to the property. VGRP's Brief at 32. This issue was not raised in the VGRP's Pa.R.A.P. 1925(b) statement. Accordingly, it is waived. ***Castillo***, 888 A.2d at 780. Nevertheless, although we conclude this issue is waived, we note that in its opinion, the trial court pointed out that the agreement specifically provided that VGRP was afforded no right to inspection or due diligence. Trial Court Opinion, 1/27/20, at 5; The Agreement,

- 17 -

10/18/18, at ¶ 5. VGRP's argument concerning access to the property is a benefit for which it did not bargain. However, insofar as VGRP now asserts in its brief that having access to the property was an affirmative duty under ¶ 12 of the agreement, VGRP's Brief at 14, that issue was not raised in VGRP's Pa.R.A.P. 1925(b) statement and is waived on appeal. *Castillo*, 888 A.2d at 780.

VGRP's next sub-issues, (3)(a)-(e), enumerate factors from the Restatement (Second) of Contracts concerning "materiality" of the breach that the trial court allegedly failed to consider. VGRP's Brief at 34-36. However, as stated above, VGRP never mentioned the materiality of the breach before the trial court. Moreover, VGRP did not raise the Restatement or any of its factors in its Pa.R.A.P. 1925(b) statement. Therefore, we conclude that these sub-issues are waived as well. *Castillo*, 888 A.2d at 780; *Satiro*, 237 A.3d at 1150.

VGRP next contends that even if it defaulted by failing to close on the sale of the property, forfeiting the $1.5 million down payment as liquidated damages amounts to an unreasonable penalty. VGRP's Brief at 36. Once again, VGRP did not raise this issue in its Pa.R.A.P. 1925(b) statement. Instead, VGRP alleged that the trial court erred in ordering VGRP's $1.5 million to be released to MPCA as liquidated damages "where MPCA had not adhered [to] the procedural predicates to secure damages, established liability on the part of VGRP, or established that the deposit constituted reasonable liquidated

damages in the event that it did establish liability[.]" VGRP's Pa.R.A.P. 1925(b) Statement, 5/14/19, at 2.

In its opinion, the trial court addressed this boilerplate issue as follows:

> This [c]ourt held a hearing on April 10th, 2019 on the Special Master's March 5, 2019 recommendation to Approve the Sale to CCI. In its Order of April 1[2], this [c]ourt approved the sale to CCI and specifically confirmed the default of VGRP. VGRP was given the opportunity to be heard on the issue of its default, and it[s] unclear what other "procedural predicates" VGRP claims were required.

Trial Court Opinion, 1/27/20, at 10. We reiterate that a Pa.R.A.P. 1925(b) statement that is too vague to identify an issue results in waiver. *Satiro*, 237 A.3d at 1150.

However, *assuming arguendo*, that VGRP had properly preserved and presented this issue on appeal, we would conclude that it is without merit. Indeed, the trial court confirmed that VGRP forfeited its $1.5 million down payment. Although VGRP contends that $1.5 million is an "illegal penalty," VGRP's Brief at 36, were we to reach this issue, we would disagree.

This Court has opined:

> Liquidated damages is a term of art originally derived from contract law; it denotes "'the sum a party to a contract agrees to pay if he breaks some promise, and which, having been arrived at by a good faith effort to estimate in advance the actual damage that will probably ensue from the breach, is legally recoverable ... if the breach occurs.'" *In re Plywood Co. of Pa.*, 425 F.2d 151, 154 (3d Cir. 1970) (quoting *Westmount Country Club v. Kameny*, 82 N.J.Super. 200, 197 A.2d 379, 382 (1964)). A penalty, by contrast, is fixed, "not as a pre-estimate of probable actual damages, but as a punishment, the threat of which is designed to prevent the breach." *Westmount Country Club*,

- 19 -

197 A.2d at 382 (citing McCormick, DAMAGES § 146, pp. 599-600). Thus, contracting parties may provide for pre-determined liquidated damages in the event one party fails to perform, particularly in circumstances where actual damages would be difficult to estimate in advance or to prove after a breach occurs. *See Commonwealth v. Musser Forests, Inc.*, 394 Pa. 205, 213, 146 A.2d 714, 718 (1958); Kelso v. Reid, 145 Pa. 606, 611, 23 A. 323 (1892); RESTATEMENT (SECOND) OF CONTRACTS, § 356(1)("Damages for breach by either party may be liquidated in the agreement but only at an amount that is reasonable in the light of the anticipated or actual loss caused by the breach and the difficulties of proof of loss; a term fixing unreasonably large liquidated damages is unenforceable on grounds of public policy as a penalty."). *See generally Geisinger Clinic v. Di Cuccio*, 414 Pa.Super. 85, 99, 606 A.2d 509, 516 (1992) (listing criteria to differentiate liquidated damages from penalties).

*Pantuso Motors, Inc. v. Corestates Bank, N.A.*, 798 A.2d 1277, 1282, (Pa. 2002). "Traditionally, a forfeiture that reflects nine percent, *see Laughlin v. Baltalden, Inc.*, 191 Pa.Super. 611, 159 A.2d 26 (1960), or ten percent, *see Kraft v. Michael*, 166 Pa.Super. 57, 70 A.2d 424 (1950), of the purchase price is not tantamount to a penalty." *Palmieri v. Partridge*, 853 A.2d 1076, 1081 (Pa. Super. 2004).

Herein, the parties agreed that in the event of default, VGRP would forfeit its down payment. The Agreement, 10/18/18, at ¶ 20. Moreover, the $1.5 million down payment constituted substantially less than the nine or ten percent forfeitures that this Court has not deemed penalties. *Palmieri*, 853 A.2d at 1081. Were we to reach this issue, we would conclude that VGRP's forfeited down payment, which represented approximately 2.6% of the $58.75 million purchase price, was not a penalty.

In its final issue, VGRP asserts that the trial court abused its discretion in permitting the sale of the property to CCI because a sale to VGRP remained viable and in the best interests of the seller. VGRP's Brief at 38. However, in its brief, VGRP provided no citation to relevant authority to substantiate its final claim of error. It is well settled that the "[f]ailure to cite relevant legal authority constitutes waiver of the claim on appeal." ***In re Estate of Whitley***, 50 A.3d 203, 209 (Pa. Super. 2012). Accordingly, we deem this issued waived.

Were we to address this issue, we would affirm on the basis of the trial court opinion, which addressed the issue as it was presented in VGRP's Pa.R.A.P. 1925(b) statement, as follows:

> a) After the initial bids were placed, the Special Master proceeded to negotiate with both CCI and VGRP to endeavor or close the best deal for MPCA. Negotiation in the context of a sales process is the norm, and there was no procedure in place or Order of Court that prohibited the Special Master from communicating with each potential buyer separately. That being said, it was apparent at the [c]ourt hearings that both parties were consistently and contemporaneously advised by the Special Master of all on going negotiations.
>
> b) This [c]ourt found and agrees with the Special Master and, his broker, CBRE and that the CCI deal was the best offer for MPCA.
>
> c) The Special Master did not state to the [c]ourt that VGRP did not have the financial ability to close, but only stated to the [c]ourt that the Special Master had requested and VGRP failed to supply reasonable assurance that it had the financial resources to close. The onus was on VGRP to produce evidence to the Special Master and for whatever reason, it failed to do so.
>
> d) The [c]ourt did indeed have VGRP's Complaint Seeking Specific Performance. VRGP had already defaulted and its Sales

- 21 -

Agreement with MPCA had been terminated as of the Special Master's letter of December 3, 2019. Therefore, there was not an agreement in existence upon which to Order specific performance.

CONCLUSION

The sale process utilized by the Special Master was a success yielding the highest and best offer for MPCA, ending the deadlock in it[s] ownership/management and producing the best return for its owners. VGRP as the initial successful bidder had every opportunity to buy the apartment complex under the terms to which it had agreed. It[s] failure to do so does not create error on the part of this [c]ourt.

Trial Court Opinion, 1/27/20, at 11.

For the reasons set forth above, we conclude that VGRP is entitled to no relief.[4] Accordingly, we affirm the April 12, 2019 order.

_____

[4] Appellees assert that VGRP's appeal should be dismissed as moot because the apartment building was sold to CCI, the LAV defendant's received their distribution and cannot be made to return that payment, and VGRP did not obtain a stay pending appeal. Appellees' Brief at 41-46. Therefore, Appellees claim that neither this Court nor the trial court has the authority to grant VGRP relief. *Id.* at 44-46. Conversely, VGRP argues that despite the procedural posture, the appeal is not moot. VGRP's Reply Brief at 6. VGRP contends that MPCA is the responsible party, the Special Master still holds $2.25 million in escrow for outstanding liabilities, the LAV defendants were not a party the agreement, and, pursuant to a public record search, CCI remains the owner of the apartment building. *Id.* at 7-8 (citing VGRP's Answer to Appellees' Motion to Dismiss for Mootness). Thus, VGRP contends that this Court has the authority to direct the payment of money and direct the transfer of title to the property. *Id.* at 8. We note that "[a]n issue can become moot during the pendency of an appeal due to an intervening change in the facts of the case or due to an intervening change in the applicable law." *Deutsche Bank Nat. Co. v. Butler*, 868 A.2d 574, 577, (Pa. Super. 2005) (quotation omitted). "An issue before a court is moot if in ruling upon the issue the court cannot enter an order that has any legal force or effect." *Id.* (citation omitted). Because it appears that the facts of this matter have remained unchanged, we do not find the appeal moot. Nevertheless, we conclude that VGRP is entitled to no relief.

Order affirmed.

Judge Musmanno joins the Memorandum.

Judge McLaughlin concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date:  04/21/2021