J-S33032-20

2020 PA Super 185

| | | |
|---|---|---|
| FRANCESCO SATIRO | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ANTONIO MANINNO, AM 3686 INC., | : | No. 3146 EDA 2019 |
| VINNIE MANINNO,  MANINNOS | : | |
| ITALIAN EATERY PIZZARIA, MAGDY | : | |
| K. MOHAMED, RANDY RAMIREZ, AND | : | |
| SIKA CORP | : | |

Appeal from the Judgment Entered December 4, 2019
In the Court of Common Pleas of Montgomery County Civil Division at
No(s):  No. 2015-22125

BEFORE:   DUBOW, J., MURRAY, J., and STEVENS, P.J.E.*

OPINION BY STEVENS, P.J.E.:                    **FILED AUGUST 07, 2020**

Appellant Francesco Satiro appeals *pro se* from the judgment[1] entered

in the Court of Common Pleas of Montgomery County on December 4, 2019,

---

* Former Justice specially assigned to the Superior Court.

[1] Appellant purports to appeal from the Order entered on October 2, 2019; however, a party seeking to file a notice of appeal first must file a *praecipe* to enter judgment on the non-jury verdict and the judgment must be entered on the docket with appropriate notice of the same by the prothonotary to the parties. It is only after entry of judgment and notice of the same to the parties that this Court has jurisdiction to review the merits of an appeal. **See Johnston the Florist, Inc. v. TEDCO Constr. Corp.**, 657 A.2d 511, 514 (Pa.Super. 1995) (*en banc*) (stating entry of judgment is a prerequisite to the exercise of this Court's jurisdiction). In a *Per Curiam* Order entered on November 25, 2019, this Court directed Appellant to *praecipe* the trial court prothonotary to enter judgment on the decision of the trial court to avoid quashal of his appeal.  Appellant complied, and judgment was entered on

on a non-jury verdict in favor of Antonio Mannino, a/k/a Vinnie Mannino and the president of AM 3686 Inc, (hereinafter "Appellee") in this breach of contract action. The trial court further ordered that Appellee shall return a $5,000.00 cash deposit to Appellant. Following our review, we affirm.

The trial court set forth the relevant facts and procedural history herein as follows:

**FACTS AND PROCEDURAL HISTORY**

[Appellant] is an adult individual residing at 376 Stoney Run Road, Spring City, PA, 19475. Def.'s Proposed Findings of Fact #1. [Appellee] does business as Mannino's Pizzeria and Italian Eatery. Def.'s Proposed Findings of Fact #2; Compl. § 2. Magdy Mohamed (hereinafter "Mohamed"), is an adult individual residing at 907 N. Charlotte Street, Pottstown, PA 19464. Def.'s Proposed Findings of Fact #3. Mohamed leases the property located at 903 N. Charlotte Street, Pottstown, PA 19464 to "AM 3686 T/A Mannino's Pizza." Ex. 10.

On or about May 15, 2015, [Appellant] and [Appellee] signed an agreement titled "Receipt and Acknowledgement." Ex. 1. Under the agreement, [Appellant] is the Buyer and AM 3686, Inc. is the Seller, with [Appellee] signing as "President" on behalf of AM 3686, Inc. *Id*. The Receipt and Acknowledgement stated that [Appellant] gave [Appellee] a five thousand dollar ($5,000) cash deposit and provided that "[t]he parties agree that the Buyer

_____

December 4, 2019. In a *Per Curiam* Order entered on December 11, 2019, this Court indicated we had received a response to our November 25, 2019, Order and permitted the appeal to proceed. Despite the fact that Appellant's filing of a notice of appeal preceded the entry of judgment, his notice of appeal is timely and proper. **See** Pa.R.A.P. 905(a) (appeal treated as filed after entry of judgment); **see also** Pa.R.A.P. 903(a) ("notice of appeal ... shall be filed within 30 days after entry of the order from which the appeal is taken."). We have amended the caption accordingly.

will purchase from Seller the business Mannino's Pizzeria and Italian Eatery and all its assets and the liquor licensed [sic] granted to AM 3686, Inc., for the Sum of One Hundred and Fifty-five Thousand Dollars." Ex. 1. The Receipt and Acknowledgement also provided that it would be "superceded [sic] by the Asset Sale Agreement once both parties have their counsel review the Asset Sale Agreement and then sign the agreement with twenty thousand dollars down payment being paid." *Id*.

At the time [Appellant] and [Appellee] signed the Receipt and Acknowledgement, AM 3686 Inc. was party to a written commercial gross lease with Mohamed, which required monthly rent of $3,250/month through March 13, 2019 (approximately four additional years). Ex. 10. This lease had a second option to extend the lease for five years beyond the first option period, which would increase rent $600/year ($50/month) each additional year of the second option period. *Id*. At trial, [Appellee] testified that he never intended to continue leasing the property from Mohamed if he successfully sold the property to [Appellant]. N.T. Bench Trial 61:25-62:9, July 15, 2019. [Appellant's] own Proposed Findings of Facts submitted to this [c]ourt state that "[Appellee] obviously would have a problem paying monthly lease payments to Landlord after selling his business and liquor license." P1.'s Proposed Findings of Fact #8. For this reason, [Appellee] went to his landlord, Mohamed, and requested that he prepare a new lease for [Appellant]. N.T. Bench Trial 24:25-25:3. Mohamed testified that he prepared this new lease (hereinafter "Draft Lease") for [Appellant] but that [Appellant] never contacted him to ask questions about the lease after receiving it. *Id*. at 24:25-25:3; 30:18-20; see also Ex. 11.

The Draft Lease differed from the commercial lease between [Appellee] and Mohamed in Sections 11 (Utilities and Services) and 12 (Maintenance and Repairs). Compare Ex. 10, 9§ 11-12 with Ex. 11, §§ 11-12. In the lease between [Appellee] and Mohamed, Sections 11 and 12 provided that the landlord would pay for specified utilities and services and make all necessary repairs to various parts of the property, while Sections 11 and 12 of the Draft Lease shifted these responsibilities to the tenant. Compare Ex. 10, 9§ 11-12 with Ex. 11, 9§ 11-12. Mohamed testified that he intended to give [Appellant] the same lease that had previously been provided to [Appellee]. N.T. Bench Trial 30:7-9. [Appellant's] own Proposed Findings of Facts submitted to this [c]ourt offer a possible explanation for the discrepancies between the leases, suggesting that "[a]pparently the parties didn't realize the difference in the proposed Commercial lease prepared by

- 3 -

[Appellee's] attorney" or that the difference could be due to "typographic error." Pl.'s Proposed Findings of Fact #13.

The record fails to clearly establish that [Appellant] attempted to negotiate any terms of the Draft Lease with Mohamed directly or follow-up with him after receiving the Draft Lease. N.T. Bench Trial 30:18-20. Rather, [Appellant] testified that he "always told [Appellee] he should have spoke [sic] to the landlord[.]" *Id*. at 36:7:-11. During trial, [Appellant] and his counsel repeatedly stated that [Appellee] breached a duty in the Receipt and Acknowledgment by not assigning [Appellee's] lease with Mohamed to [Appellant] and instead asking [Appellant] to negotiate a new lease with Mohamed. *Id*. at 20:16-19; 55:5-12. [Appellant] also alleges that [Appellee] breached a contractual duty by not executing the agreements related to the sale of assets and liquor license. *See* Pl.'s Proposed Conclusions of Law #2. The Receipt and Acknowledgment, however, provides no language related to whether [Appellee] had a duty to assign the lease or execute subsequent agreements. Ex. 1. [Appellant] himself testified that "[t]he receipt didn't say anything about the lease." N.T. Bench Trial 48:6-10. Section 15 of [Appellee's] lease with Mohamed stated that "Tenant will not assign this lease or sublet any part of the premises without the written consent of Landlord. Landlord will not unreasonably withhold such consent." Ex. 10, § 15. [Appellee] testified that he understood neither what this provision meant nor the meaning of the word "assign." N.T. Bench Trial 19:12-20:15. Mohamed also testified that he did not know the meaning of this provision or the word "assignment." *Id*. at 25:9-26:2. For context, English is not the first language of [Appellant], [Appellee], or Mohamed.

Counsel for [Appellee] prepared an Asset Sale Agreement, which was never signed. Ex. 9. Both the draft Asset Sale Agreement and the Draft Lease between [Appellant] and Mohamed attached exhibits listing the assets which [Appellant] would purchase as part of the deal. *See* Ex. 9; 11; 12. These lists delineated assets owned by AM 3686 Inc. and Mohamed. *Id*. Mohamed was not shown these full lists but testified that he owns "whatever is in the restaurant as equipment." N.T. Bench Trial 29:3-4; 29:16-21. [Appellee] testified that on June 22, 2015, the date originally chosen for closing, [Appellant] refused to sign the Agreement of Sale because he found the Draft Lease "unfair." *Id*. at 66:4-67:2. When asked by this [c]ourt why [Appellant] backed out of the agreement, [Appellee] testified "[Appellant] said he don't [sic] like the lease. And he said: I'm not going to buy your

place. I'm not going to buy anything. This is unfair." *Id*. at 16:8-12.

After [Appellant] backed out of the agreement, [Appellee's] attorney prepared a Termination Agreement, which provided that [Appellee] would return to Plaintiff $2,500—half of [Appellant's] $5,000 cash deposit previously paid to [Appellee] pursuant to the Receipt and Acknowledgment. *Id*. at 76:2-8; Ex. 14. [Appellee] testified that he went to meet [Appellant] at a pizza shop with "a check in [his] hand" to return the $2,500 (half of [Appellant's] deposit) and sign the Termination Agreement, but [Appellant] "changed his mind" and refused to sign the Termination Agreement or accept the check. N.T. Bench Trial 76:9-11. [Appellant] sought damages for breach of contract and specific performance of the contract.[1] The [Appellant] filed a timely Notice of Appeal on October 28, 2019.

___

[1]After [Appellant's] case-in-chief, [Appellee] moved for nonsuit. The [c]ourt granted nonsuit as to breach of confidentiality provision (Count II), negligent misrepresentation (Count III), failure to cooperate in performance (Count IV), and tortious interference with prospective business relations with defendants Sika Corp. and Randy Ramirez (Counts VI and VII), denying nonsuit only as to breach of contract (Count I) and specific performance

Trial Court Opinion, 12/30/19 at 1-5.

Following the bench trial, on October 2, 2019, the trial court issued detailed findings of fact and conclusions of law wherein it found, *inter alia*: No contract existed between the parties because there had been no meeting of the minds, and even assuming, *arguendo*, a contract did exist, Appellant failed to meet a condition precedent of negotiating a new lease with Mohammed. **See** Conclusions of Law, 10/2/19, at ¶¶ 5, 11; Even if there had been a contract with no condition precedent, Appellant's breach of contract claim fails because he had not shown Appellee had breached a contractual duty under the Receipt and Acknowledgement. **Id**. at ¶ 12; Appellant did not show he is

entitled to specific performance, because he did not establish there is no adequate remedy at law. *Id*. at ¶¶ 28-29; Specific performance would be contrary to equity and justice. *Id*. at ¶¶ 30-32. The trial court ultimately held:

> [Appellant] having failed to establish that [Appellee] breached the contract, or that [Appellant] is entitled to specific performance, it is hereby ORDERED that judgment is entered in favor of [Appellee] and against [Appellant]. It is further ORDERED that [Appellee] shall return the $5,000 cash deposit to [Appellant].

*Id* at ¶ 33.

Appellant filed a motion for reconsideration on October 15, 2019, and the trial court denied the motion in its October 17, 2019, Order.

Appellant timely appealed, and on October 29, 2019, the trial court ordered Appellant to file a concise statement of the matters complained on appeal. Appellant complied on November 12, 2019, at which time he presented twenty-nine (29) issues for review on appeal. In his appellate brief, Appellant sets forth the following question for our review:

> "Did the court commit legal error by not enforcing the parties' written contract by specific performance of the business and liquor license?"

Brief for Appellant at 15.

Before we consider the merits of Appellant's question presented on appeal, we first must determine whether he has preserved it for appellate review. An appellant's concise statement must identify the errors with sufficient specificity for the trial court to identify and address the issues the

appellant wishes to raise on appeal. ***See*** Pa.R.A.P. 1925(b)(4)(ii) (requiring a Rule 1925(b) statement to "concisely identify each ruling or error that the appellant intends to challenge with sufficient detail to identify all pertinent issues for the judge").  This Court explained in ***Riley v. Foley***, 783 A.2d 807, 813 (Pa.Super. 2001), that Pa.R.A.P. 1925 is a crucial component of the appellate process because it allows the trial court to identify and focus on those issues the parties plan to raise on appeal. We further determined that "a Concise Statement which is too vague to allow the court to identify the issues raised on appeal is the functional equivalent to no Concise Statement at all." ***Commonwealth v. Dowling***, 778 A.2d 683, 686-87 (Pa.Super. 2001). "Even if the trial court correctly guesses the issues Appellant[ ] raise[s] on appeal and writes an opinion pursuant to that supposition the issues are still waived." ***Kanter v. Epstein***, 866 A.2d 394, 400 (Pa.Super. 2004) (citation omitted, *appeal denied,* 584 Pa. 678, 880 A.2d 1239 (2005), *cert. denied,* ***Spector, Gadon & Rosen, P.C. v. Kanter***, 546 U.S. 1092, 126 S.Ct. 1048, 163 L.Ed.2d 858 (2006).

We also have stated that:

> When a court has to guess what issues an appellant is appealing, that is not enough for meaningful review. When an appellant fails adequately to identify in a concise manner the issues sought to be pursued on appeal, the trial court is impeded in its preparation of a legal analysis which is pertinent to those issues.
>
> In other words, a Concise Statement which is too vague to allow the court to identify the issues raised on appeal is the functional equivalent of no Concise Statement at all.

- 7 -

> While [**Commonwealth v. Lord**, 553 Pa. 415, 719 A.2d 306 (1998)] and its progeny have generally involved situations where an appellant completely fails to mention an issue in his Concise Statement, for the reasons set forth above we conclude that **Lord** should also apply to Concise Statements which are so vague as to prevent the court from identifying the issue to be raised on appeal....

**Lineberger v. Wyeth**, 894 A.2d 141, 148 (Pa.Super. 2006) (quoting **Commonwealth v. Dowling**, 778 A.2d 683, 686-87 (Pa.Super. 2001)).

This Court similarly has found waiver applicable to voluminous concise statements. As indicated in **Tucker v. R.M. Tours**, 939 A.2d 343, 346 (Pa.Super. 2007):

> Our law makes it clear that Pa.R.A.P. 1925(b) is not satisfied by simply filing any statement. Rather, the statement must be "concise" and coherent as to permit the trial court to understand the specific issues being raised on appeal.
>
> Specifically, this Court has held that when appellants raise an "outrageous" number of issues in their 1925(b) statement, the appellants have "deliberately circumvented the meaning and purpose of Rule 1925(b) and ha[ve] thereby effectively precluded appellate review of the issues [they] now seek to raise." **Kanter**, 866 A.2d at 401. We have further noted that such "voluminous" statements do not identify the issues that appellants actually intend to raise on appeal because the briefing limitations contained in Pa.R.A.P. 2116(a) makes the raising of so many issues impossible. **Id.** "Further, this type of extravagant 1925(b) statement makes it all but impossible for the trial court to provide a comprehensive analysis of the issues." **Jones v. Jones**, 878 A.2d 86, 90 (Pa.Super. 2005).

Moreover, we cannot accord special relief to an appellant merely because of his or her *pro se* status. As stated in **Commonwealth v. Rivera**, 685 A.2d 1011 (Pa.Super. 1996):

> While this court is willing to liberally construe materials filed by a *pro se* litigant, we note that appellant is not entitled to any

particular advantage because he lacks legal training. As our supreme court has explained, any layperson choosing to represent himself in a legal proceeding must, to some reasonable extent, assume the risk that his lack of expertise and legal training will prove his undoing.

*Id.* at 1013, quoting **O'Neill v. Checker Motors Corp.**, 567 A.2d 680, 682 (Pa.Super. 1989).

In the matter *sub judice*, the trial court authored its Rule 1925(a) Opinion by combining issues Appellant had raised with what it deemed to be common themes and ultimately found no merit to each grouping. While the court was diligent in guessing and attempting to address the merits of Appellant's claims, when issues on appeal are so voluminous and vague that the court must guess at what they are, there can be no meaningful appellate review and the issues are waived. **See Dowling**, 778 A.2d at 686; **see also Commonwealth v. Heggins**, 809 A.2d 908, 912 (Pa.Super. 2002) (finding even if the trial court correctly guesses the issues an appellant raises on appeal and writes an opinion pursuant to that supposition, the issue is still waived).

In light of all the foregoing, we find Appellant's issue presented in his appellate brief to be waived.[2]

Judgment Affirmed.

---

[2] We note that even if not waived, Appellant's claim would not entitle him to relief. Following our review of the record, we would agree with the trial court's conclusion that no contract existed between the parties; thus, specific performance of contractual terms is not possible.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 8/7/20