J-A15002-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT OP 65.37**

| | | |
|---|---|---|
| CITIZENS BANK, N.A. F/K/A RBS CITIZENS, N.A. | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| JEFFREY R. SMITH AND TRACEY L. SMITH | : | No. 1346 WDA 2022 |
| | : | |
| Appellants | : | |

Appeal from the Order Entered October 21, 2022
In the Court of Common Pleas of Allegheny County
Civil Division at No. MG-19-000380

BEFORE:   MURRAY, J., McLAUGHLIN, J., and PELLEGRINI.[*]

MEMORANDUM BY MURRAY, J.:                    **FILED: JULY 14, 2023**

Husband and wife, Jeffrey R. Smith and Tracey L. Smith (Appellants),

appeal from the order denying their petition to set aside sheriff's sale.  For the

reasons discussed below, we affirm.

The trial court recounted the procedural history of this case as follows:

> … Citizens Bank, N.A. f/k/a RBS Citizens, N.A. (the "Bank")
> filed the Complaint in Mortgage Foreclosure on March 29, 2019.
> According to the Complaint, the subject mortgage on the Property
> was dated November 17, 20[11,] and was recorded on November
> 23, 2011.  The original principal amount was $102,400.00 payable
> in monthly installments with an interest rate of 4.250%.
> [Appellants] executed a modification of the note and mortgage on
> January 18, 2017, which modified the principal balance of the loan
> to $78,186.74 and changed the interest rate.

_____

[*] Retired Senior Judge assigned to the Superior Court.

Alleging default of the loan, the Bank caused [Appellants] to be served with the Complaint on or about on November 7, 2019. A default judgment was subsequently entered against [Appellants] on December 16, 2019[,] in the amount of $87,139.14. On January 29, 2020, the Bank filed an Affidavit Pursuant to Rule 3129.1 and a Praecipe for Writ of Execution. A sheriff[']s sale was originally scheduled for April 6, 2020, but [several] postponements primarily due to the COVID-19 pandemic followed.

Trial Court Opinion, 1/12/23, at 2 (record citations omitted).

The trial court further explained Appellants' efforts to prevent the sheriff's sale:

On or about March 25, 2021, [Appellants] submitted a completed loss mitigation package to the Bank. (***See***, Answer [¶ ¶] 11, 56 and [the Bank's] Exhibits B and C). By letter dated April 20, 2021, the Bank provided the reasons [Appellants] were not approved for either of two programs, the Payment Deferral [P]rogram and the Flex Modification Program[,] based on their completed application. (***See***, [Bank] Exhibit B). [Appellants] appealed their denial, and by letter dated June 10, 2021, the Bank denied their appeal. (***See***, [Bank] Exhibit C).

[Appellants'] position largely overlooks the initial March 25, 2021 application. Instead, [Appellants] focus on their efforts to submit a second application. By email dated July 1, 2021[,] Mrs. Smith inquired of Sarah Kennedy, Esq. ("Kennedy") and Maryann Leventhal ("Leventhal"), of the outside legal counsel firm for the Bank, whether the Property would be sold on July 6, 2021[,] and indicated that she "gave [*sic*] another loan modification to do." (***See***, [Appellants'] Exhibit 2). Kennedy replied by email that the sale had been postponed to September 7, 2021. (***See***, [Bank] Exhibit D).

Beginning on August 3, 2021, [Appellants] started communicating with Matthew Camara ("Camara"), Senior Customer Advocate at Citizen's Bank, who promised to assist [Appellants] in connection with the mortgage modification. (***See***, Petition ¶¶ 14-15; Answer ¶¶ 14-15; [Appellants'] Exhibits). [Appellants] alleged that, following a period of delay in receiving the correct paperwork from the Bank, they received a loss

mitigation form on August 13, 2021[,] and sent a complete packet on August 23, 2021 to the Loss Mitigation Department located in Glen Allen, VA via regular U.S. Mail. (*See*, Petition [¶¶]17-19). The Bank specifically denies that [Appellants] submitted a loss mitigation package in August of 2021. (*See*, Answer ¶ 18). Both parties agree that the Bank had no record of an August 2021 application. (*See*, Petition [¶] 23; Answer [¶¶] 18, 23).

The parties also agree that [Appellants] mailed a loss mitigation package on October 25, 2021. (*See*, Petition [¶] 30; Answer [¶] 30; [Appellants'] Exhibit 5). The evidence of record supports a finding that the October 2021 package was received by the Bank on October 29, 2021, and the parties agree receipt was 38 days before the scheduled sheriff[']s sale, which had then been postponed to December 6, 2021. (*See*, Petition [¶] 32 and Answer [¶¶] 31-32).

The parties dispute that the October 29, 2021 loss mitigation application was a complete package. Each of [Appellants] attached one of their most recent paystubs to this application. (*See*, cross-listed [Appellants'] Exhibit 9 and [Bank] Exhibit F). While the Bank disputes that Mrs. Smith submitted her most recent paystub because she would have had a bi-weekly stub dated October 22nd, it is not unreasonable that she would not have had that in hand when [Appellants] mailed the package on October 25th. (*See*, Answer [¶] 34). Mrs. Smith verified that she did not have the stub in her possession as of the date of mailing the package. (*See*, [Appellants']/[Bank] Exhibit G (Answer to Interrogatory No. 7)). Mrs. Smith's failure to provide an October 22 paystub was not fatal on its own as to whether the loss mitigation package was complete when mailed on October 25, 2021. However, the Bank also notified [Appellants] that Mr. Smith's [paystub] did not provide sufficient information in the form of pay periods and frequency. The Bank requested that [Appellants] send paystubs from the last 30 days for Mr. Smith and all paystubs after October 2, 2021, for Mrs. Smith. (*See*, [Appellants'] Exhibit 8a).

By automated email dated November 1, 2021[,] with the subject "Missing Items", the Bank notified [Appellants] that there were deficiencies with the application that could be corrected through the on-line portal. (*See*, [Appellants'] Exhibit 6). Mrs. Smith forwarded this email to Camara on November 2, 2021, expressing frustration. Also on November 2, 2021, the Bank

issued a letter RE: Notice of Incomplete Application for Home Assistance Program, which was not post-marked until November 11, 2022. (*See*, [Appellants'] Exhibits 8a and 8b). This letter expressly states, "Time is of the Essence: Failure to submit a completed loss mitigation application more than 37 days before a scheduled foreclosure sale date may result in your request for loss mitigation not being reviewed." [Appellants] uploaded the required documents on or about November 16, 2021, which was only 20 days before the scheduled sale. (*See*, [Bank's] Exhibit G, Answer to Interrogatory No. 5.)

Trial Court Opinion, 1/12/23, at 5-7 (footnote omitted).

The Bank sold the property at sheriff's sale on December 6, 2021. On March 8, 2022, Appellants filed a petition to set aside the sheriff's sale. Following discovery and oral argument, the trial court entered the order denying Appellants' petition. This timely appeal followed.[1]

Appellants present the following questions for review:

> 1. Did the [trial] court abuse its discretion when it concluded, without factual support, that Appellants had not submitted a second complete loss mitigation application more than 37 days in advance of a scheduled foreclosure sale?
>
> 2. Did the [trial] court abuse its discretion when it concluded that [the Bank] was not legally obliged to consider Appellants' October 29, 2021 loss mitigation application, even though [the Bank] instructed Appellants repeatedly over the course of months to submit a second loss mitigation application and provided material support in aid of the application?
>
> 3. Did the [trial] court abuse its discretion when it concluded that there was no equitable basis for granting Appellants' Petition to Set Aside Sheriff's Sale?

Appellants' Brief at 2-3.

---

[1] Appellants and the trial court have complied with Pa.R.A.P. 1925.

Pennsylvania Rule of Civil Procedure 3132[2] provides:

**Setting Aside Sale**

Upon petition of any party in interest before delivery of … the sheriff's deed to real property, the court may, upon proper cause shown, set aside the sale and order a resale or enter any other order which may be just and proper under the circumstances.

Pa.R.C.P. 3132.

This Court has explained the purpose of a sheriff's sale in mortgage

foreclosure

is to realize out of the land, the debt, interest, and costs which are due, or have accrued to, the judgment creditor. A petition to set aside a sheriff's sale is grounded in equitable principles and is addressed to the sound discretion of the hearing court. The burden of proving circumstances warranting the exercise of the court's equitable powers rests on the petitioner[.] … When reviewing a trial court's ruling on a petition to set aside a sheriff's sale, we recognize that the court's ruling is a discretionary one, and it will not be reversed on appeal unless there is a clear abuse of that discretion.

An abuse of discretion is not merely an error of judgment. Furthermore, it is insufficient to persuade the appellate court that it might have reached a different conclusion if, in the first place, charged with the duty imposed on the trial court.

An abuse of discretion exists when the trial court has rendered a judgment that is manifestly unreasonable, arbitrary, or capricious, has failed to apply the law, or was motivated by partiality, prejudice, bias, or ill will. Where the record adequately supports the trial court's reasons and factual basis, the court did not abuse its discretion.

---

[2] Pennsylvania Rule of Civil Procedure 3181(a)(8) makes Rule 3132 applicable to mortgage foreclosure actions.

*Wells Fargo Bank, N.A. v. Ferreri*, 199 A.3d 892, 895-96 (Pa. Super. 2018) (internal citations omitted). Sheriff's sales have been set aside where the petitioner challenges the validity of the sale proceedings; there is a deficiency pertaining to the notice of the sale; or misconduct occurs in the bidding process. *See Blue Ball Nat'l Bank v. Balmer*, 810 A.2d 164, 166 (Pa. Super. 2002).

The instant appeal concerns Appellants' loss mitigation applications submitted pursuant to the Real Estate Settlement Procedures Act of 1974 (RESPA), 12 U.S.C. §§ 2601-2617. The implementing regulations for RESPA state:

> **§ 1024.41 Loss mitigation procedures.**
>
> ….
>
> (g) Prohibition on foreclosure sale. If a borrower submits a **complete loss mitigation application** after a servicer has made the first notice or filing required by applicable law for any judicial or non-judicial foreclosure process **but more than 37 days before a foreclosure sale**, a servicer shall not move for foreclosure judgment or order of sale, or conduct a foreclosure sale, unless:
>
>> (1) The servicer has sent the borrower a notice pursuant to paragraph (c)(1)(ii) of this section that the borrower is not eligible for any loss mitigation option and the appeal process in paragraph (h) of this section is not applicable, the borrower has not requested an appeal within the applicable time period for requesting an appeal, or the borrower's appeal has been denied;
>>
>> (2) The borrower rejects all loss mitigation options offered by the servicer; or

>> (3) The borrower fails to perform under an agreement
>> on a loss mitigation option.

12 C.F.R. § 1024.41(g) (emphases added).

> Duplicative applications are treated differently:

> (i) Duplicative requests. A servicer must comply with the requirements of this section for a borrower's loss mitigation application, **unless the servicer has previously complied with the requirements of this section for a complete loss mitigation application submitted by the borrower and the borrower has been delinquent at all times since submitting the prior complete application**.

12 C.F.R. § 1024.41(i) (emphasis added).

In their first issue, Appellants argue the trial court erred in finding Appellants had not submitted a complete loss mitigation application more than 37 days in advance of the sheriff's sale. Appellants' Brief at 7. Appellants "dispute whether or not Appellants' October 29, 2021 loss mitigation application was, in fact, complete." *Id.* Appellants maintain the Bank solely alleged that the application did not contain Mrs. Smith's most recent paystub.[3] *Id.* Appellants assert they were not required to supply the most recent paystubs because they supplied their two most recent bank statements. *Id.* at 8-9. Appellants acknowledge Mrs. Smith submitted a paystub that was not her most recent paystub, explaining that it was the most current paystub in her possession when Appellants submitted the application. *Id.* at n.1.

---

[3] This statement is incorrect. In its Notice of Incomplete Application, the Bank also sought copies of Jeffrey Smith's paystubs for the past 30 days. Notice of Incomplete Application, 11/2/21, at 1 (unnumbered).

We first consider whether Appellants have preserved this issue.

An appellant's concise statement **must identify the errors with sufficient specificity for the trial court to identify and address the issues the appellant wishes to raise on appeal**. This Court explained … that Pa.R.A.P. 1925 is a crucial component of the appellate process because it allows the trial court to identify and focus on those issues the parties plan to raise on appeal. We further determined that a [c]oncise [s]tatement which is too vague to allow the court to identify the issues raised on appeal is the functional equivalent to no Concise Statement at all. Even if the trial court correctly guesses the issues Appellant[] raise[s] on appeal and writes an opinion pursuant to that supposition the issues are still waived. …

Our law makes clear that Pa.R.A.P. 1925(b) is not satisfied by simply filing any statement. Rather, the statement must … permit the trial court to understand the specific issues being raised on appeal.

*Satiro v. Maninno*, 237 A.3d 1145, 1150-51 (Pa. Super. 2020) (internal quotation marks and citations omitted, emphasis added).

Appellants' Rule 1925(b) statement reads:

Did the [trial] court err when it concluded [Appellants] had not submitted a second complete loss mitigation application to [the Bank] prior to December 6, 2021, when [Appellants'] certified mail receipt tracking history shows that the application arrived on October 29, 2021, and a copy of their original application includes all the information required by [the Bank's] application form?

Concise Statement of Errors, 12/2/22, at 1. Appellants failed to indicate they were challenging the court's finding that their application was incomplete due to Mrs. Smith's failure to include her most recent paystub, where Appellants submitted their two most recent bank statements. Appellants also failed to raise this claim in their petition to set aside sheriff's sale and brief in support of the petition. Rather, they claimed the application was complete because

- 8 -

Mrs. Smith provided the most recent paystub in her possession. Petition to Set Aside Sheriff's Sale, 3/8/22, at 5-7; Brief in Support, 3/8/22, at 2-3. Although Appellants raised the issue in a supplemental brief filed more than four months later, they failed to raise it in their concise statement. Supplemental Brief in Support, 7/18/22, at 2-4.

Because Appellants did not properly identify the issue in their concise statement, the trial court did not address it in its opinion. *See* Trial Court Opinion, 1/12/23, at 9-10. Accordingly, we are constrained to find Appellants waived the issue. *Satiro*, 237 A.3d 1150-51; *see also Provident Nat. Bank, N.A. v. Song*, 832 A.2d 1077, 1080-81 (Pa. Super. 2003) (affirming trial court's finding of waiver where trial court was unable to discern many issues because Appellants filed a vague 1925(b) statement and failed to raise issues in their petition to set aside sheriff's sale).

In the absence of waiver, we would agree with the trial court, which found:

> While [Appellants'] focus on the circumstances surrounding the second application, the fact that a first application was completed and fully vetted cannot be overlooked. At the time of delivery of the loss mitigation application on October 29, 2021, the Bank had previously completed review of a complete loss mitigation application package earlier in the year. This application was denied, appealed by [Appellants] to the Bank, and finally denied. This met the Bank's statutory requirement to review one loss mitigation package received more than 37 days before a foreclosure sale under 12 C.F.R. § 1024.41(g). Pursuant to 12 C.F.R. § 1024.41(i), a servicer is not required to meet the requirements of section 1024.41 if the request is duplicative, the servicer already complied with those requirements previously, and the borrower has remained delinquent since the first request.

> Based on this language, [the trial c]ourt concluded that the Bank complied with its regulatory obligations in finalizing review of the first application and that the Bank was not required to review the second package.

Trial Court Opinion, 1/12/23, at 9. Accordingly, we would conclude that the trial court did not clearly abuse its discretion. **Wells Fargo Bank**, 199 A.3d at 895-96. Appellants' first issue does not merit relief.

In their second issue, Appellants contend the Bank "waived any right it may have had to refuse to evaluate Appellants' October 29, 2021, loss mitigation application by actively soliciting and encouraging its submission." Appellants' Brief at 9; **see id.** at 9-12. Appellants argue the Bank "initiated phone contact" with them, "actively" solicited the duplicative application, and "acted in direct opposition to its right to refuse" to consider a duplicative application. **Id.** at 11. Thus, Appellants claim the Bank "relinquished its right to refuse to evaluate" Appellants' duplicative application. **Id.**

Appellants do not provide factual support for their claim that the Bank initiated contact, actively solicited the duplicative application, or "acted in direct opposition to its right to refuse." Appellants' Brief at 11. We have reviewed the portions of the record Appellants cite to support their claim. **See** Appellants' Brief at 11 (citing to Petition to Set Aside Sheriff's Sale, 3/8/22, at 2-4; Email from Camara to Mrs. Smith, 8/3/21, at 1 (unnumbered); United States Postal Service Receipt, 10/25/21, at 1 (unnumbered); and Answer to Petition to Set Aside Sheriff's Sale, 3/30/22, at 3 (unnumbered)). The record

does not support Appellants' account of the Bank's actions. We remind Appellants that it is not our role find evidence to support an undeveloped claim. *See Wolf v. Santiago*, 230 A.3d 394, 401 (Pa. Super. 2020).

Moreover, Appellants provide no pertinent legal support for this issue. While they rely on *First Nat'l Bank of Milford v. Dept. of Banking*, 286 A.2d 480, 482 (Pa. Cmwlth. 1972), the reliance is misplaced. We have cautioned that this Court "is not bound by the decisions of the Commonwealth Court." *IRS v. Blue Mtn. Ministry, Inc.*, 265 A.3d 824, 828 n.3 (Pa. Super. 2021) (citation omitted). Also, the case is not persuasive.

In *First Nat'l Bank*, a bank applied to the Department of Banking, seeking to open a branch in Milford, Pennsylvania. *First Nat'l Bank*, 286 A.2d at 481. A bank already in Milford opposed the application. *Id.* The Department of Banking disclosed to the opposing bank only information from the application that it did not deem confidential. *Id.* During the pendency of the parties' appeal, the Pennsylvania Supreme Court, in an unrelated matter, found the Department of Banking procedures violated banks' rights to due process. *See id.* (citing *Conestoga Nat'l Bank of Lancaster v. Patterson*, 275 A.2d 6 (Pa. 1971)). The Commonwealth Court held the opposing bank was entitled to the benefit of the *Conestoga* decision and remanded the case to the Department of Banking. *Id.*

The *First Nat'l Bank* decision is not applicable to this case involving the setting aside a sheriff's sale for alleged failure to comply with RESPA.

- 11 -

"When an appellant cites no relevant authority to support an argument, this Court is inclined to believe there is none." ***Commonwealth v. Reyes-Rodriguez***, 111 A.3d 775, 781 (Pa. Super. 2015). ***See also*** Pa.R.A.P. 2119(a) and (b) (requiring an appellant to discuss and cite pertinent authorities); ***Commonwealth v. Antidormi***, 84 A.3d 736, 754 (Pa. Super. 2014) (finding waiver where appellant "cited no legal authorities nor developed any meaningful analysis"). Appellants cite no factual or legal support for their claim that the Bank waived its right to refuse to evaluate the duplicative application. Appellants' second issue does not merit relief.

In their third issue, Appellants assert the sheriff's sale should be "set aside on grounds of equitable estoppel." Appellants' Brief at 12. Appellants claim the Bank promised to evaluate their duplicative application, and they relied on the Bank's representation, "spent time and energy" gathering information to complete the application, and "refrained from taking other steps that were legally available to them[.]" ***Id.*** at 13.

This Court has explained:

Equitable estoppel is a doctrine that prevents one from doing an act differently than the manner in which another was induced by word or deed to expect. A doctrine sounding in equity, equitable estoppel recognizes that an informal promise implied by one's words, deeds or representations which leads another to rely justifiably thereon to his own injury or detriment, may be enforced in equity.

The two essential elements of equitable estoppel are inducement and justifiable reliance on that inducement. The inducement may be words or conduct and the acts that are induced may be by commission or forbearance provided that a

change in condition results causing disadvantage to the one induced.

Equitable estoppel applies to prevent a party from assuming a position or asserting a right to another's disadvantage inconsistent with a position previously taken[;] the person inducing the belief in the existence of a certain state of facts is estopped to deny that the state of facts does in truth exist, over a different or contrary state of facts as existing at the same time, or deny or repudiate his acts, conduct or statement.

It is well established that the burden rests on the party asserting the estoppel to establish such estoppel by clear, precise and unequivocal evidence.

*Morgan v. Millstone Resources, Ltd.*, 267 A.3d 1235, 1248 (Pa. Super. 2021) (citation and ellipses omitted).

Here, the trial court rejected Appellants' equitable estoppel claim after finding *Thayer v. Tax Claim Bureau of Bucks County*, 701 A.2d 808 (Pa. Cmwlth. 1997) "on point."[4] Trial Court Opinion, 1/12/23, at 12, *see id.* at 12-14. The trial court reasoned:

In *Thayer*, the appellant/taxpayer claimed that he relied on a misrepresentation by an employee of the Tax Claim Bureau that the property would not be sold, notwithstanding a court order stating that the land would be sold at an auction on December 11, 1995. The Commonwealth Court found that the taxpayer did not meet his burden of proof of establishing equitable estoppel. Further, the taxpayer did not prevail because he could not establish that he was unable to inform himself of the true facts, that the sale would move forward. *Id.* at 810.

_____

[4] While decisions of the Commonwealth Court are not binding, there are instances when they may serve as persuasive authority. *See Delaware Valley Landscape Stone, Inc. v. RRQ, LLC*, 284 A.3d 459, 461 n.3 (Pa. Super. 2022).

- 13 -

[Instantly, the trial c]ourt concluded [Appellants] had not established an equitable basis for relief because the record did not demonstrate that there was innocent reliance by [Appellants] on the representations made by the Bank or its agents. The email correspondence between the parties also demonstrate[s] that [Appellants] were able to inform themselves of the true facts like whether the sheriff[']s sale would proceed forward. (*See*, *Thayer*, 701 A.2d at 810 and [Appellants'] Exhibit 2).

The facts of the instant case fall even short of the facts examined by the trial court in *Thayer*. In the instant case, at no time did the Bank represent that the sale, which had already been postponed for a period of twenty (20) months, would be further postponed to accommodate a second review. The Bank provided [Appellants] with an opportunity to submit a second package but there was no promise that the application would be accepted or approved. While [Appellants] were in communication with Camara beginning in early August of 2021, they did not submit a second loss mitigation package until the last minute. (*See*, [Appellants'] Exhibit 3). Regardless of the timing of the submission of the second application, there was no suggestion in the record that the Bank would postpone the sale just because a package was submitted and/or completed with supplementary information before the December 2021 sale took place.

Unlike in *Thayer*, [Appellants] were not notified that the court-ordered sale would be postponed. Even if they claimed to be unaware of the Bank's intention to proceed, like [the appellants in] *Thayer*, [Appellants] had the ability to inform themselves of this fact. The record demonstrates that Mrs. Smith checked with counsel for the Bank about previously scheduled sales. (*See*, [Appellants'] Exhibit 2). The Bank's November 2, 2021 letter provided the following warning, "Time is of the Essence: Failure to submit a completed loss mitigation application more than 37 days before a scheduled foreclosure sale date may result in your request for loss mitigation not being reviewed."

The evidence was also insufficient to demonstrate [Appellants'] reliance on any statement or action of the Bank. In support of reliance, [Appellants] state that they spent time and energy in gathering the information needed. However, [Appellants] expended these resources without the guarantee or promise that a different result on a second application would occur. (*See*, Bank Exhibit H).[3] They claim to also have refrained

- 14 -

from taking other steps legally available to them such as filing for bankruptcy. [Appellants'] conclusory statements in this regard are insufficient to satisfy their "clear evidence" showing. Further, through the application process, [Appellants] were still free to take other actions to improve their legal position.

> [3] Notably, [Appellants] remained delinquent since the time that the first request submitted in March of 2021 was completed. (**See**, [Bank] Exhibit H).

In sum, the record did not demonstrate that there were any promises made beyond providing assistance in facilitating the application submission process. There were no extraordinary promises on which [Appellants] could rely. The record also lacked sufficient evidence to sustain the reliance element of an equitable claim.

Trial Court Opinion, 1/12/23, at 12-15 (footnote in original).

Upon review of the record and applicable law, we adopt the trial court's analysis as our own. As Appellants have not demonstrated a clear abuse of discretion by the trial court, their third issue does not merit relief. **Wells Fargo Bank**, 199 A.3d at 895-96.

Order affirmed.

Judgment Entered.

_Joseph D. Seletyn_
Joseph D. Seletyn, Esq.
Prothonotary


Date: 7/14/2023

- 15 -