J-A04036-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| H&M HOLDINGS GROUP, LLC, HAUSER FAMILY FARMS, LLC, MELINDA H. DAVIS AND HANNAH M. HAUSER | : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : : : | |
| | : | No. 985 MDA 2023 |
| ALAN K. PATRONO, JONATHAN ALAN PATRONO, JANE HAUSER PATRONO, POLLY E. PATRONO A/K/A POLLY E. PATRONO-CARLSON, JOHN J. MURPHY, III, PATRONO & MURPHY, LLC, APPLE LEAF ABSTRACTING & SETTLEMENT COMPANY AND JOHN DOE(S)/JANE DOE(S) | : : : : : : : : : : | |
| APPEAL OF: ALAN KIM PATRONO, JONATHAN ALAN PATRONO, JANE HAUSER PATRONO AND POLLY E. PATRONO-CARLSON | : : : : | |

Appeal from the Order Entered June 16, 2023
In the Court of Common Pleas of Adams County
Civil Division at No(s): 2018-SU-1293

BEFORE: LAZARUS, P.J., NICHOLS, J., and SULLIVAN, J.

MEMORANDUM BY SULLIVAN, J.: **FILED: MAY 15, 2025**

Alan Kim Patrono ("Alan"), Jonathan Alan Patrono ("Jonathan"), Jane

Hauser Patrono ("Jane"), and Polly E. Patrono-Carlson ("Polly") (collectively,

"the Patronos") appeal from the interlocutory order finding they violated the

Pennsylvania Uniform Voidable Transfer Act ("PUVTA"),[1] and prohibiting them from transferring or encumbering property. We dismiss the appeal.

This matter arises out of a family dispute over the management and debts of a now-bankrupt winery and hard cider manufacturer known as "Hauser Estate."[2] Jane is the daughter of Helen Hauser and is married to Alan. They have two adult children, Jonathan and Polly, who is married to Michael Carlson ("Michael"). Alan and Jonathan are attorneys. Hannah M. Hauser ("Hannah") and Melinda H. Davis ("Melinda") are Jane's sisters.

Hauser Estate obtained loans from Members First Federal Credit Union ("Members First"), which Hannah, Melinda, Jane, Alan, and Jonathan each secured with personal guaranties. Hauser Estate began to fail, and it defaulted on the Members First loans. Hannah and Melinda believed Jane, Alan, and Jonathan were mismanaging Hauser Estate for their own personal gains, while

---

[1] *See* 12 Pa.C.S.A. §§ 5101-5114. Briefly, PUVTA (previously entitled the Pennsylvania Uniform Fraudulent Transfers Act ("PUFTA"), but amended and renamed effective February 2018) provides a transfer of property is voidable where, *inter alia*, the transfer was made by a debtor "with actual intent to hinder, delay, or defraud any creditor . . .." 12 Pa.C.S.A. §§ 5104(a)(1) (defining a voidable transfer); *see also* 12 Pa.C.S.A. § 5107(a)(1) (defining remedies and permitting a creditor to obtain "[a]voidance of the transfer . . . to the extent necessary to satisfy the creditor's claim"). Additionally, "[s]ubject to applicable principles of equity and in accordance with applicable rules of civil procedure," PUVTA permits, as a remedy, "an injunction against further disposition by the debtor or a transferee, or both, of the asset transferred . . .." 12 Pa.C.S.A. § 5107(a)(3)(i).

[2] Jonathan held a majority of the voting shares of Hauser Estate and the position of president. Hannah and Melinda held minorities of the voting shares.

Jane, Alan, and Jonathan questioned whether Hannah and Melinda were acting in Hauser Estate's best interests.

Events surrounding the family disputes accelerated in July 2018. Hannah and Melinda formed H&M Holdings Group, LLC ("H&M"), which purchased the notes and guaranties on the Members First loans. Around that time, Jane, Alan, and Jonathan transferred their interests in real property to Polly for nominal consideration ("the 2018 transfers").[3] Although the deeds executing the 2018 transfers referred to Polly as a married person, the deeds did not name Polly's husband, Michael, as a grantee. By the end of July 2018, H&M commenced the first in a series of actions in Adams, Dauphin, and Cumberland Counties involving numerous plaintiffs and defendants.

As the different actions unfolded, the Patronos, and Michael, executed and recorded deeds in 2021 and 2023 ("the 2021 and 2023 deeds"), which, the Patronos asserted, restored Jane, Alan, and Jonathan's interests in the subject properties to their pre-2018 states for the same nominal consideration in the 2018 transfers. **See** The Patronos' Mot. for Partial Summ. J., 3/6/23, at 3 (arguing the 2018 transfers had been reversed "such that title has reverted to the original owners . . ."); **see also** the Patrono's Brief at 35

_____

[3] The properties transferred to Polly are located in Adams County, and included parcels known as, or referred to, as: (1) 32 West Middle Street, Gettysburg; (2) 98 East Broadway, Gettysburg; (3) 28 West Middle Street, Gettysburg; (4) the Biglersville Road property; and (5) the Heckenluber Road property (collectively, "the subject properties"). **See** Order, 6/16/23, at 14-15; **see also** Exs. P-7, P-12, P-18, P-20, P-26.

(asserting "[t]itle to each of the properties had gone back to the original title-holders in July 2021"). The 2021 and 2023 deeds for four of the subject properties named Michael and Polly, as husband and wife, as grantors, and Michael and Polly both signed those deeds. ***See*** Exs. P-9, P-11, P-15, P-19, P-24.[4]

The trial court, having before it actions commenced in Adams County and having been the recipient of the transfer of other actions from Dauphin and Cumberland Counties, directed the filing of a third amended complaint to clarify the actions. H&M, Hannah, and Melinda, among others ("the H&M parties"), filed the court-ordered third amended complaint, which included four counts against the Patronos for fraudulent transfers, or conspiracy to commit fraudulent transfers, in violation of PUVTA ("the PUVTA claims"). The parties agreed to separate the PUVTA claims from the other actions for a nonjury trial, which occurred in April 2023. A jury trial on the remaining claims in the third amended complaint was scheduled for October 2023.[5]

_____

[4] We note there were five exhibits regarding the transfers of four properties because two exhibits involved a deed and a deed of correction involving 98 East Broadway. ***See*** Exs. P-11, P-15. Additionally, Michael was not named as a grantor on the one deed purporting to restore Jonathan's interest in property. ***See*** Ex. P-28.

The H&M parties have disputed whether the 2021 and 2023 deeds actually returned Jane, Alan, and Jonathan's interests to the same states as before the 2018 transfers.

[5] The Patronos have filed separate appeals from other interlocutory orders in the related actions. We address those appeals at J-A04037-25 through J-A04040-25.

Following two days of trial on the PUVTA claims, and upon consideration of the parties' post-trial memorandums, the trial court found against the Patronos and in favor of the H&M parties. *See* Op. & Order, 6/16/23, at 9 ("the June 16, 2023 order"). The June 16, 2023 order voided the deeds related to the 2018 transfers and the 2021 and 2023 deeds. Further, the June 16, 2023 order "enjoined [the Patronos] from selling, transferring, or otherwise encumbering the [subject properties]," and added "[a]ny sale, transfer, or encumbrance of the [subject] properties . . . without [c]ourt approval shall be deemed void *ab initio*." *Id*. at 14-15 (italics added).[6] The order deferred a hearing on punitive damages and legal fees assessable against the Patronos until trial on the remaining claims in the third amended complaint. *See id*. at 15.

The Patronos appealed the June 16, 2023 order within thirty days. The Patronos complied with the trial court's order to submit a Pa.R.A.P. 1925(b) statement and therein challenged the court's determination they violated

---

[6] Two months after the entry of the June 16, 2023 order, John Murphy ("Murphy"), a named defendant in the third amended complaint and Alan's law firm partner, filed a petition for relief. Pet. for Relief, 8/18/23, at 1. Murphy, acting as a managing member of Hammerhead Realty, LLC, a non-party in the actions, indicated, *inter alia*, Jane and Alan had entered into an agreement of sale of 28 West Middle Street in January 2023. *See id*. at 1-2. Hammerhead sought court approval to complete the sale, about which Jane and Alan had made no mention of this pending sale during their testimony at the April 2023 trial. The trial court denied the petition for relief.

PUVTA.[7] The trial court filed a Rule 1925(a) opinion responding to the issues as stated in the Patronos' Rule 1925(b) statement.

On appeal, the Patronos now raise the following issues for review:

1. The trial court erred in failing to find insolvency but nevertheless issuing an injunction where the challenged real estate transfers had been restored to their prior owners before judicial process compelling reversion had issued.

2. The trial court lacked subject matter jurisdiction to avoid conveyances of real estate and vacate deeds involving a non-party.

The Patronos' Brief at 10.

Before considering these issues, we address whether this interlocutory appeal is properly before this Court and whether the Patronos preserved their issues for review. On questions of appellate court jurisdiction and issue preservation, our standard of review is *de novo*, and our scope of review is

_____

[7] The Patronos raised the following errors complained of on appeal:

1. The trial court failed to find that [H&M] held a right to payment not subject to good faith dispute entitling them to relief under PUVTA.

2. The trial court failed to find that [the Patronos] were rendered insolvent by the transfers on which it found liability/basis for relief under PUVTA.

3. The evidentiary record did not support the trial court's finding that [the Patronos] had fraudulent intent in their actions.

Rule 1925(b) Statement, 8/4/23, at 1 (some capitalizations omitted). All three of the Patronos' errors complained of on appeal referred to "plaintiffs/appellants" rather than the parties.

plenary. ***See Chongqing Kangning Bioengineering Co., Ltd. v. Conrex Pharm. Corp.***, 327 A.3d 209, 214 (Pa. Super. 2024).

Here, there is no dispute that the June 16, 2023 order was not a final order. ***See*** Pa.R.A.P. 341(b). Nevertheless, the Patronos seek to appeal as of right under Pa.R.A.P. 311(a)(4), which provides:

**(a) General Rule.** An appeal may be taken as of right . . . from the following types of orders:

\* \* \* \*

*(4) Injunctions.* An order that grants or denies, modifies or refuses to modify, continues or refuses to continue, or dissolves or refuses to dissolve an injunction unless the order was entered:

(i) Pursuant to 23 Pa.C.S.[A.] §§ 3323(f), 3505(a); or

(ii) After a trial but before entry of the final order. ***Such order is immediately appealable, however, if the order enjoins conduct previously permitted or mandated or permits or mandates conduct not previously mandated or permitted, and is effective before entry of the final order***.

Pa.R.A.P. 311(a)(4) (emphasis added); ***see also*** The Patronos' Brief at 1.

Following our review, we exercise jurisdiction in this appeal to the extent the June 16, 2023 order enjoined the Patronos from transferring the subject properties. ***See*** Pa.R.A.P. 311(a)(4)(ii). Before trial in this matter, the Patronos were free to transfer or encumber the subject properties. The June 16, 2023 order clearly sought to restore the ownership of the subject properties as it stood prior to the 2018 transfers and, critically, prevent the Patronos from engaging in further transfers until resolution of all remaining claims against all parties. Thus, the June 16, 2023 order enjoined conduct

the Patronos were previously permitted to engage in before trial, and the restraint took immediate effect before the entry of a final order. **See** Pa.R.A.P. 311(a)(4)(ii); **Matenkoski v. Greer**, 213 A.3d 1018, 1025 (Pa. Super. 2019) (holding that a post-trial order prohibiting a party from operating a car repair business was appealable under Rule 311(a)(4)(ii) where (1) there was no prior order prohibiting the conduct, (2) the conduct was previously permitted, and (3) the restraint took effect after trial but before the entry of a final order);[8] **see also Com. ex rel. Kane v. UPMC**, 129 A.3d 441, 473 (Pa. 2015) (concluding Rule 311(a)(4) permitted an appeal as of right from an order that was "prohibitory in nature, in that it bar[red] both parties from taking further action . . . without obtaining approval from the Commonwealth Court"). Therefore, Rule 311(a)(4)(ii) provides this Court with appellate jurisdiction, and we decline to quash this appeal.

Nevertheless, a review of the record establishes the Patronos have failed to preserve their first issue challenging the injunctive relief issued by the trial court. Pennsylvania Rule of Appellate Procedure 302(a) states, "Issues not raised in the trial court are waived and cannot be raised for the first time on appeal." Pa.R.A.P. 302(a). Here, at the conclusion of trial, the trial court stated its preliminary findings that the Patronos had engaged in fraudulent transfers, and the parties and the court discussed possible remedies, including

---

[8] We note the Patronos did not file post-trial motions before taking this appeal. However, as stated in **Matenkoski**, the filing of post-trial motions is not a prerequisite for taking an interlocutory appeal challenging the issuance of injunctive relief. **See Matenkoski** 213 A.3d at 1025 n.5.

punitive damages, different forms of injunctive relief, and the appointment of a receiver. *See* N.T., 4/27/23, at 402-08. The trial court indicated it would impose an injunction on future transfers of the property while the remaining claims in the third amended complaint proceeded to the scheduled jury trial. *See id*. at 408-09, 415-16. In the following exchange, the Patronos' counsel clarified the court did not intend to impose a permanent injunction, which counsel for H&M parties had orally requested:

> [The Patronos' counsel]: If there's a request for a permanent injunction, that raises a whole host of issues . . .. I mean, the individuals could never sell this property regardless of [the] disposition of the rest of the case.
>
> THE COURT: Until the primary litigation is concluded.
>
> [The Patronos' counsel]: So that would not be a true permanent injunction?
>
> THE COURT*: It would not be a permanent injunction. It would depend on the judgment* . . . *entered following the trial coming up, the jury trial* [on the remaining claims in the third amended complaint].

*Id*. at 416 (emphasis added). The Patronos' counsel did not object to the intended issuance of a temporary injunction. *See id*. In their post-trial memorandum, the Patronos then argued they did not violate PUVTA. As to the possible remedies, they briefly asserted, "[E]ven if technical [PUVTA] violations have been made out, *the only remedy should be the remedy imposed by the court at the conclusion of trial, to wit, an interim, non-prejudicial order prohibiting transfer or encumbrance* . . .." The Patronos' Post Trial Mem. Sur Claims under PUVTA, 5/19/23, at 2 (emphasis

added); *see also id*. at 9 (indicating a non-prejudicial temporary restraint on alienation or encumbrance was the only "appropriate" relief if the trial court found PUVTA violations). Therefore, the Patronos essentially conceded the appropriateness of a temporary restraint on their ability to transfer or encumber the subject properties pending the outcome of the entire litigation. *Cf. Brown v. Commonwealth Dep't of Health*, 434 A.2d 1179, 1181 (Pa. 1981) (stating that "[o]rdinarily, a party who consents to . . . a judgment or order cannot appeal therefrom") (internal citation omitted).

Additionally, Pennsylvania Rule of Appellate Procedure 1925(b) requires an appellant to "concisely identify each error that the appellant intends to assert with sufficient detail to identify the issue to be raised for the judge." Pa.R.A.P. 1925(b)(4)(ii). "Issues not included in the [s]tatement . . . are waived." Pa.R.A.P. 1925(b)(4)(vii). Here, the Patronos' Rule 1925(b) statement did not challenge the court's injunction. *See e.g.* Rule 1925(b) Statement, 8/4/23, at 1 ("The trial court failed to find that [the Patronos] were rendered insolvent by the transfers on which it found liability/basis for relief under PUVTA") (some capitalizations omitted). Fairly construed, the Patronos' Rule 1925(b) statement challenged only the violations of PUVTA, and the trial court's Rule 1925(a) opinion did not address the newly raised claims concerning its decision to temporarily restrain the Patronos' ability to transfer or encumber the subject properties. *See Satiro v. Maninno*, 237 A.3d 1145, 1150 (Pa. Super. 2020) ("When a court has to guess what issues an appellant

is appealing, that is not enough for meaningful review") (internal citation omitted).

For these reasons, we conclude the Patronos waived their challenge to the issuance of injunctive relief by failing to object to that relief in the trial court and by failing to preserve their issue in their Rule 1925(b) statement. *See* Pa.R.A.P. 302(a); *see also* Pa.R.A.P. 1925(b)(4)(vii).  Therefore, we will not consider their first issue challenging the issuance of the injunction absent a finding of insolvency.

In their second issue, the Patronos claim the H&M parties failed to join an indispensable party, namely, Polly's husband, Michael, who was named on most of the 2021 and 2023 deeds as a grantor and signed those deeds.  It is well settled that "[t]he failure to join an indispensable party is a non-waivable defect that implicates the trial court's subject matter jurisdiction." *Northern Forests II, Inc. v. Keta Realty Co.*, 130 A.3d 19, 28-29 (Pa. Super. 2015) (internal citation omitted).  "The want of jurisdiction over the subject matter may be questioned at any time . . . in the trial court, before or after judgment, or for the first time in an appellate court . . .." *Turner v. Estate of Baird*, 270 A.3d 556, 560 (Pa. Super. 2022) (internal citations and quotation marks omitted).

To the extent we must address the Patronos' indispensable party claim,[9] the threshold question in that analysis is whether justice can be done in the absence of a third party. **See In re Estate of Anderson**, 317 A.3d 997, 1005 (Pa. Super. 2024). A court faced with a claim that a party is indispensable must consider: (1) whether the absent party has a right or an interest related to the claim, (2) the nature of that right or interest, (3) whether that right or interest is essential to the merits of the issue, and (4) whether justice can be afforded without violating the due process rights of absent parties. **See Estate of Anderson**, 317 A.3d at 1005. A party is not indispensable where no redress is sought against him and his rights would not be prejudiced by any decision in the case. **See Strasburg Scooters, LLC v. Strasburg Rail Road, Inc.**, 210 A.3d 1064, 1069 (Pa. Super. 2019). Our standard of review is *de novo*, and our scope of review is plenary. **See Estate of Anderson**, 317 A.3d at 1004.

On appeal, the Patronos cite the general proposition that when an action affects property held or claimed by tenants in the entireties, both spouses, here, Polly and Michael, are indispensable parties. **See** The Patronos' Brief at

_____

[9] As stated above, we have exercised appellate jurisdiction in this case over the restraints on the Patronos' transferring and encumbering the subject properties under Pa.R.A.P. 311(a)(4)(ii). We note Michael was not subject to those restraints. To the extent we must address the indispensable party issue as a matter of subject matter jurisdiction, we disapprove of the fact the Patronos failed to raise this issue in the trial court. We further disapprove of the Patronos raising fundamentally inconsistent arguments that Michael was an indispensable party to the litigation while continuing to assert the 2021 and 2023 deeds returned the subject properties to their pre-2018 states and rendered the PUVTA claims concerning the 2018 transfers moot.

24-25. They argue because Michael signed most of the 2021 and 2023 deeds, he had an essential interest which prevented a court from adjudicating the PUVTA claims in his absence. ***See id***.

The Patronos' argument borders on frivolity. In the 2018 transfers, Jane, Alan, and Jonathan deeded their interests in the subject properties to Polly. Michael was not named as a grantee. Therefore, those deeds did not satisfy all four unities necessary to establish his interest in real property in the entireties. ***See Fratangelo v. Fratangelo***, 520 A.2d 1195, 1201 (Pa. Super. 1987) (stating that the "[t]he presumption that all property coming into [a] marriage is matrimonial property is not equivalent to the creation of entireties property, which requires that the property be acquired in joint names of husband and wife"); ***see also In re Estate of Rivera***, 194 A.3d 579, 586 (Pa. Super. 2018) (noting that a tenancy in the entireties requires not only a legally binding marriage, but also the satisfaction of four unities: (1) unity of time, which requires that the interests of the tenants vest at the same time; (2) unity of title, which requires the tenants to have obtained their title by the same instrument; (3) unity of possession, which requires the tenants to have an undivided interest in the whole estate; and (4) unity of interest, which requires the tenants to have estates in the property of the same type, duration, and amount). Moreover, there was no indication Michael and Polly ever satisfied the four unities following the 2018 transfers. ***See*** N.T., 4/21/23 at 44, 46, 66, 77 (the H&M parties' expert indicating there were no quitclaim deeds from Polly conveying her interest to herself and Michael as husband and

wife; also indicating it is typical in Adams County to join a spouse on a deed, but doing so was not necessary in this case because Michael was not "an owner"); N.T., 4/27/23, at 260 (indicating Polly believed Michael took title or an interest because he was her husband and she was told it was better if he signed "the transfer back"), 266 (indicating Polly did not execute a quitclaim deed).

Accordingly, we discern no basis to conclude Michael had an interest in the subject properties as a tenant in the entireties. At most, Michael would have had an equitable interest in marital property acquired by Polly during marriage. *See* The Patronos' Reply Brief at 7-8. However, there is no indication that Polly, from whom Michael's equitable interests would arise, took her interest in the subject properties in good faith and for reasonable consideration; nor does the record indicate Polly, or Michael, intended to retain, or profit from, any interest transferred to Polly in 2018. Thus, any interest Michael would have had in the property was too attenuated to consider him an indispensable party. *Cf*. *U.S. Bank Nat'l Ass'n for Pennsylvania Hous. Fin. Agency v. Watters*, 163 A.3d 1019, 1023 n.3 (Pa. Super. 2017) (concluding a wife's equitable interest in property during a pending divorce did not make her an indispensable party in a foreclosure action where she did not own the property and had no interest in the mortgage or mortgage loan obtained by her husband). Put differently, justice could be done by avoiding the transfers in Michael's absence and return the Patronos' interests to their pre-2018 states. Accordingly, as our review reveals no facial

merit to the Patronos' claim that Michael was an indispensable party, or other basis to question the subject matter jurisdiction of the trial court, we conclude this issue does not constitute a basis to avoid dismissal.

In sum, having concluded the Patronos waived their challenge to the injunctive relief issued by the court and finding no facial basis to challenge the subject matter jurisdiction of the trial court, we dismiss this appeal.

Appeal dismissed.

Judge Nichols joins this memorandum.

President Judge Lazarus concurs in the result.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 05/15/2025